# HENDERSON *v.* UNITED STATES

No. 95–232.   Argued March 19, 1996—Decided May 20, 1996

GINSBURG, J., delivered the opinion of the Court, in which STEVENS, SCALIA, KENNEDY, SOUTER, and BREYER, JJ., joined. SCALIA, J., filed a concurring opinion, in which KENNEDY, J., joined, *post*, p. 672. THOMAS, J., filed a dissenting opinion, in which REHNQUIST, C. J., and O'CONNOR, J., joined, *post*, p. 673.

*Richard A. Sheehy* argued the cause for petitioner. With him on the briefs were *Kenneth R. Breitbeil* and *Lauren L. Beck.*

*Malcolm L. Stewart* argued the cause for the United States. With him on the brief were *Solicitor General Days, Assistant Attorney General Hunger, Deputy Solicitor General Bender, Michael E. Robinson,* and *Timothy R. Lord.*

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the period allowed for service of process in a civil action commenced by a seaman injured aboard a vessel owned by the United States. Recovery in such cases is governed by the Suits in Admiralty Act, 46 U. S. C. App. § 741 *et seq.*, which broadly waives the Government's sovereign immunity. See § 742 (money judgments); § 743 (costs and interest). Rule 4 of the Federal Rules of Civil Procedure allows 120 days to effect service of the summons and timely filed complaint, a period extendable by the court. The Suits in Admiralty Act, however, instructs that service shall be made "forthwith." § 742. The question presented is whether the Act's "forthwith" instruction for service of process has been superseded by the Federal Rule.

In the Rules Enabling Act, 28 U. S. C. § 2071 *et seq.*, Congress ordered that, in matters of "practice and procedure," § 2072(a), the Federal Rules shall govern, and "[a]ll laws in conflict with such rules shall be of no further force or effect," § 2072(b). We hold that, in actions arising under federal law, commenced in compliance with the governing statute of limitations, the manner and timing of serving process are generally nonjurisdictional matters of "procedure" controlled by the Federal Rules.

I

On August 27, 1991, petitioner Lloyd Henderson, a merchant mariner, was injured while working aboard a vessel owned and operated by the United States. On April 8, 1993, after exhausting administrative remedies, Henderson filed a seaman's personal injury action against the United States, pursuant to the Suits in Admiralty Act, 41 Stat. 525, as amended, 46 U. S. C. App. § 741 *et seq.*[1] Under that Act,

---

[1] Henderson's complaint also invoked the Public Vessels Act, 43 Stat. 1112, as amended, 46 U. S. C. App. § 781 *et seq.* The Government maintains, however, that Henderson's suit falls under the exclusive governance of the Suits in Admiralty Act, because his claim arose from employment aboard a Maritime Administration vessel. See Brief for United States 8,

suits of the kind Henderson commenced "may be brought . . . within two years after the cause of action arises." § 745. Henderson brought his action well within that time period. He commenced suit, as Federal Rule of Civil Procedure 3 instructs, simply "by filing a complaint with the court."[2]

Having timely filed his complaint, Henderson attempted to follow the Federal Rules on service. It is undisputed that the following Rules, and nothing in the Suits in Admiralty Act, furnished the immediately relevant instructions. Federal Rule of Civil Procedure 4(a) (1988) provided: "Upon the filing of the complaint the clerk shall forthwith issue a summons and deliver the summons to the plaintiff or the plaintiff's attorney, who shall be responsible for prompt service of the summons and a copy of the complaint." Rule 4(b) provided: "The summons shall be signed by the clerk, [and] be under the seal of the court." Rule 4(d) stated: "The summons and complaint shall be served together."[3]

A series of slips occurred in obtaining the summons required by Rule 4. Henderson's counsel requested the appropriate summons forms and file-stamped copies of the complaint on April 8, 1993, the day he filed Henderson's

---

n. 9 (citing 57 Stat. 45, as amended, 50 U. S. C. App. § 1291(a) (1988 ed.)). Henderson apparently does not contest this assertion. In any case, claims under both Acts proceed the same way. See 46 U. S. C. App. § 782 (suits under the Public Vessels Act "shall be subject to and proceed in accordance with the provisions" of the Suits in Admiralty Act).

[2] In a suit on a right created by federal law, filing a complaint suffices to satisfy the statute of limitations. See *West* v. *Conrail*, 481 U. S. 35, 39 (1987). In a federal-court suit on a state-created right, however, a plaintiff must serve process before the statute of limitations has run, *if* state law so requires for a similar state-court suit. See *Walker* v. *Armco Steel Corp.*, 446 U. S. 740, 752–753 (1980) (reaffirming *Ragan* v. *Merchants Transfer & Warehouse Co.*, 337 U. S. 530 (1949)). But cf. *Hanna* v. *Plumer*, 380 U. S. 460 (1965) (*method* of service, as distinguished from time period for commencement of civil action, is governed by Federal Rules in all actions, including suits based on state-created rights).

[3] The substance of these provisions is retained in current Rules 4(a), (b), and (c)(1).

complaint. But the court clerk did not respond immediately. Counsel eventually obtained the forms on April 21, 1993, and completed and returned them to the clerk. On May 4, counsel received the summons mailed to him from the clerk's office, and on May 19, counsel sent the summons and complaint, by certified mail, to the Attorney General,[4] who received them on May 25.

Service on the local United States Attorney took longer. On May 25, Henderson's counsel forwarded the summons and complaint, as received from the clerk, to a "constable" with a request to effect service. On June 1, the constable's office returned the documents, informing Henderson's counsel that the summons was not in proper form, because it lacked the court's seal. Counsel thereupon wrote to the court clerk requesting new summons forms with the appropriate court seal. Counsel repeated this request on August 19; ultimately, on August 25, Henderson's counsel received the properly sealed summons.

Once again, Henderson's counsel requested the constable's service and, on August 30, moved for an extension of time to serve the United States Attorney.[5] The court granted the motion, extending the time for service until September 15. The United States Attorney received personal service of the summons and complaint, in proper form, on September 3, 1993.

---

[4] Federal Rule of Civil Procedure 4(d)(4), effective at that time, instructed that "a copy of the summons and of the complaint [be sent] by registered or certified mail to the Attorney General of the United States at Washington, District of Columbia." The same instruction currently appears in Rule 4(i)(1)(B).

[5] Federal Rule of Civil Procedure 4(j), then in force, provided for service of the summons and complaint within 120 days after the filing of the complaint, a time limit subject to extension for good cause. The substance of this provision is retained in current Rule 4(m), which permits a district court to enlarge the time for service "even if there is no good cause shown." Advisory Committee's Notes on 1993 Amendments to Fed. Rule Civ. Proc. 4, 28 U. S. C. App., p. 654.

Thus, the Attorney General received the complaint 47 days after Henderson filed suit, and the United States Attorney was personally served 148 days after Henderson commenced the action by filing his complaint with the court. On November 17, 1993, the United States moved to dismiss the action. The grounds for, and disposition of, that motion led to Henderson's petition for certiorari.

The United States has never maintained that it lacked notice of Henderson's complaint within the 2-year limitation period prescribed for Suits in Admiralty Act claims. See 46 U. S. C. App. § 745; Tr. of Oral Arg. 38–39 (counsel for United States acknowledged that service on Attorney General gave Government actual notice three months before 2-year limitation period ended).[6] Nor has the Government asserted any prejudice to the presentation of its defense stemming from the delayed service of the summons and complaint. And the manner and timing of service, it appears beyond debate, satisfied the requirements of Federal Rule of Civil Procedure 4 (titled "Summons" and detailing prescriptions on service of process).

In support of its motion to dismiss, the United States relied exclusively on § 2 of the Suits in Admiralty Act, 46 U. S. C. App. § 742, which provides in part:

> "The libelant [plaintiff] shall forthwith serve a copy of his libel [complaint] on the United States attorney for [the] district [where suit is brought] and mail a copy thereof by registered mail to the Attorney General of the United States."

This provision has remained unchanged since its enactment in 1920, 18 years before the Federal Rules of Civil Procedure became effective, and 46 years before admiralty cases were brought within the realm of the Civil Rules. The Government argued that Henderson's failure to serve process

---

[6] In any event, the filing of the complaint within the limitation period rendered the action timely. See *supra,* at 657, n. 2.

"forthwith," as required by § 742, deprived the District Court of subject-matter jurisdiction because § 742 describes the conditions of the United States' waiver of sovereign immunity.

The District Court initially denied the Government's motion, but reconsidered the matter based on an intervening Fifth Circuit decision, *United States* v. *Holmberg*, 19 F. 3d 1062, cert. denied, 513 U. S. 986 (1994). The court in *Holmberg*, agreeing with the United States, held that the § 742 service "forthwith" requirement "is a condition of the Government's waiver of sovereign immunity and, thus, a jurisdictional prerequisite." 19 F. 3d, at 1064. In so ruling, the *Holmberg* court rejected the argument that service of process under the Suits in Admiralty Act, as in the generality of cases arising and timely filed under federal law, is a matter of procedure, now governed by the Federal Rules of Civil Procedure.

Bound by *Holmberg*, the District Court dismissed Henderson's complaint for lack of subject-matter jurisdiction, and the Court of Appeals, adhering to *Holmberg*, affirmed. 51 F. 3d 574 (CA5 1995).[7] We granted certiorari to resolve disagreement among lower courts on the question whether Federal Rule 4, which authorizes an extendable 120-day period for service of process, supersedes the Suits in Admiralty Act provision that service on the United States be made "forthwith."[8]

---

[7] The *Holmberg* court "agree[d] that there has been no uniform definition of forthwith," as that term is used in § 742, 19 F. 3d, at 1065, and the Court of Appeals in the instant case took no position on whether service on the Attorney General 47 days after commencement of the action could count as "forthwith." 51 F. 3d, at 577. The court held, however, that the "forthwith" requirement applies to service on both officers—the United States Attorney and the Attorney General—and stated that "completing service in 148 days [through service on the United States Attorney] is not forthwith." *Id.*, at 576.

[8] Compare, *e. g., Libby* v. *United States*, 840 F. 2d 818, 819–821 (CA11 1988); *Kenyon* v. *United States*, 676 F. 2d 1229, 1231 (CA9 1981); *Battaglia*

## II

The United States first suggests that Rule 4's extendable 120-day time prescription, and the Suits in Admiralty Act's service "forthwith" instruction, can and should be read harmoniously. The Rule 4 time limit for service, Rule 4(j) at the time Henderson's action commenced,[9] provided:

> "(j) Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant . . . ." Fed. Rule Civ. Proc. 4(j) (1988).

Section 2 of the Suits in Admiralty Act, 46 U. S. C. App. § 742, prescribes service "forthwith," see *supra*, at 659, a word not precisely defined in the Act or in case law, but indicative of a time far shorter than 120 days. The apparent conflict dissolves, the Government urges, if one reads Rule 4 as establishing not "an affirmative right to serve [a] complaint" within 120 days, but only an outer boundary for timely service. See Brief for United States 14, 18, 26; Tr. of Oral Arg. 28, 30.

We reject the Government's view of the time the Federal Rules authorize for service. Reading Rule 4 in its historical context, we conclude that the 120-day provision operates not as an outer limit subject to reduction, but as an irreducible allowance. Prior to 1983, Rule 4 contained no time limit for service. Until the changes installed that year,

v. *United States*, 303 F. 2d 683, 685–686 (CA2), cert. dism'd, 371 U. S. 907 (1962), with *Jones & Laughlin Steel, Inc.* v. *Mon River Towing, Inc.*, 772 F. 2d 62, 66 (CA3 1985). See also *Kenyon*, 676 F. 2d, at 1231–1232 (Boochever, J., concurring); *Battaglia*, 303 F. 2d, at 686–687 (Friendly, J., concurring).

[9] Currently, Rule 4(m) states the time limit for service. See *supra*, at 658, n. 5.

United States marshals attended to service. The relevant Rule 4 provisions read:

> "(a) Summons: issuance. Upon the filing of the complaint the clerk shall forthwith issue a summons and deliver it for service to the marshal or to any other person authorized by Rule 4(c) to serve it. . . .
>
> .        .        .        .        .
>
> "(c) By whom served. Service of process shall be made by a United States marshal, by his deputy, or by some person specially appointed by the court for that purpose . . . ." Fed. Rule Civ. Proc. 4(a), (c) (1980).

Marshals were expected to effect service expeditiously, and Rule 41(b), providing for dismissal "[f]or failure of the plaintiff to prosecute," could be invoked as a check against unreasonable delay. See 9 C. Wright & A. Miller, Federal Practice and Procedure § 2370, pp. 374–376 (2d ed. 1995); 2 J. Moore, Moore's Federal Practice ¶ 4.18, p. 436 (2d ed. 1995).

Rule 4 changes made operative in 1983 completed a shift in responsibility for service from the United States marshals to the plaintiff. See Mullenix, Hope Over Experience: Mandatory Informal Discovery and the Politics of Rulemaking, 69 N. C. L. Rev. 795, 845 (1991). With marshals no longer available as routine process servers, the Judicial Conference considered a time control necessary; the Conference proposed, and this Court approved, 120 days from the filing of the complaint as the appropriate limit. Congress relaxed the rule change by authorizing an extension of the 120-day period if the party responsible for service showed "good cause." See *supra*, at 661; 128 Cong. Rec. 30931–30932 (1982), reprinted in 28 U. S. C. App., p. 647.

Most recently, in 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120-day period "even if there is no good cause shown." See Advisory Committee's Notes on Fed. Rule Civ. Proc. 4, 28 U. S. C. App.,

p. 654.[10]   And tellingly, the text of Rule 4 sets out, as "[a] specific instance of good cause," *ibid.*, allowance of "a reasonable time" to "cur[e] the failure to serve multiple officers . . . of the United States if the plaintiff has effected service on either the United States attorney or the Attorney General" within the prescribed 120 days.   Fed. Rule Civ. Proc. 4(i)(3).

The Federal Rules thus convey a clear message: Complaints are not to be dismissed if served within 120 days, or within such additional time as the court may allow.   Furthermore, the United States acknowledges that, § 2 of the Suits in Admiralty Act aside, Rule 4's extendable 120-day time prescription applies to the full range of civil litigation, including cases brought against the United States under the Federal Tort Claims Act, 28 U. S. C. § 2675, and the Tucker Act, ch. 359, 24 Stat. 505 (1887) (current version 28 U. S. C. §§ 1346, 1491 and other scattered sections of 28 U. S. C.). See Tr. of Oral Arg. 33.   We are therefore satisfied that Rule 4's regime conflicts irreconcilably with Suits in Admiralty Act § 2's service "forthwith" instruction, and we turn to the dispositive question: Does the Rule supersede the inconsistent statutory direction?

### III

The Rules Enabling Act, 28 U. S. C. § 2071 *et seq.*, authorizes the Supreme Court "to prescribe general rules of practice and procedure . . . for cases in the United States district courts . . . and courts of appeals," § 2072(a), and directs:

---

[10] Rule 4(m), captioned "Time Limit for Service," currently provides:

"If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant *or direct that service be effected within a specified time;* provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. . . ."   (Emphasis added.)

> "Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." §2072(b).

Correspondingly, and in confirmation of the understanding and practice under the former Federal Equity Rules, Federal Rule of Civil Procedure 82 provides: "[The Federal Rules of Civil Procedure] shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein." See 1937 Advisory Committee's Notes on Fed. Rule Civ. Proc. 82, 28 U. S. C. App., p. 821 (Rule 82 confirms that the Rules' broad allowance of claim joinder "does not extend federal jurisdiction."); see also 12 Wright & Miller, *supra*, §3141, at 210–214.

According to the United States, Rule 4 cannot supersede §2 of the Suits in Admiralty Act, 46 U. S. C. App. §742, for the latter is "jurisdictional" and affects "substantive rights" by setting the terms on which the United States waives its sovereign immunity. Henderson, in contrast, characterizes the Suits in Admiralty Act's service "forthwith" instruction as a nonjurisdictional processing rule. Service "forthwith," he urges, forms no part of the immunity waiver or §745's statute of limitations, but is simply a direction for the conduct of litigation once the case is timely launched in court— a characteristically "how to" direction in conflict with, and therefore superseded by, Rule 4.

Before examining the text of §742 to determine the character of the service "forthwith" provision, we note that the conflict with Rule 4 is of relatively recent vintage. The Suits in Admiralty Act, which allows *in personam* suits against the United States for maritime torts, was enacted in 1920, 18 years before the advent of the Federal Rules. Furthermore, admiralty cases were processed, from 1845 until 1966, under discrete Admiralty Rules. Even after 1966, the year admiralty cases were brought under the governance of the Federal Rules of Civil Procedure, Rule 4 and

the Suits in Admiralty Act service "forthwith" provision could coexist. Rule 4, as just recounted, originally contained no time prescription, only the direction that, "[u]pon the filing of the complaint the clerk shall forthwith issue a summons and deliver it for service," generally to a United States marshal. See *supra*, at 662. It was only in 1983, when plaintiffs were made responsible for service without the aid of the marshal, that the 120-day provision came into force, a provision that rendered Rule 4's time frame irreconcilable with § 742's service "forthwith" instruction.

Section 2 of the Suits in Admiralty Act, 46 U. S. C. App. § 742, captioned "Libel in personam," contains a broad waiver of sovereign immunity in its first sentence:

> "In cases where if [a vessel owned or operated by the United States] were privately owned or operated . . . a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States . . . ."

Section 3 of the Act, 46 U. S. C. App. § 743, although captioned "Procedure in cases of libel in personam," completes the immunity waiver by providing for costs and interest on money judgments against the United States.[11] See *United States* v. *Bodcaw Co.*, 440 U. S. 202, 203–204, n. 3 (1979); Fed. Rule Civ. Proc. 54(d)(1) (absent an authorizing statute, United States is not liable for costs); *Library of Congress* v. *Shaw*, 478 U. S. 310, 314 (1986) (absent an authorizing statute, United States is not liable for interest).

The United States asserts that not just the first sentence of § 742, but that section in its entirety is "jurisdictional," spelling out the terms and conditions of the Government's

---

[11] Specifically, the second sentence of § 743 reads:

"A decree against the United States . . . may include costs of suit, and when the decree is for a money judgment, interest at the rate of 4 per centum per annum until satisfied, or at any higher rate which shall be stipulated in any contract upon which such decree shall be based."

waiver of sovereign immunity, in contrast to the next section of the Suits in Admiralty Act, 46 U. S. C. App. § 743, which governs "procedure," specifying in its first sentence: "Such suits shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties." See Brief for United States 26–27; see also *Holmberg,* 19 F. 3d, at 1064; *Libby* v. *United States,* 840 F. 2d 818, 820 (CA11 1988) ("The fact that the waiver of sovereign immunity is declared in section 742, while the procedures governing admiralty suits against the United States are specified in section 743, indicates that the requirements contained in section 742 are more than procedural."). The dissent adopts this argument hook, line, and sinker. See *post,* at 674–675 (finding key to text and structure of the Suits in Admiralty Act in Congress' placement of service requirement in § 2 (46 U. S. C. App. § 742) rather than § 3 (46 U. S. C. App. § 743)). But just as § 743 is not "purely procedural," for it waives the Sovereign's immunity as to costs and interest, so § 742 is not pervasively "jurisdictional."

The sentence immediately following § 742's broad waiver, and immediately preceding the sentence on service, reads:

> "Such suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel . . . charged with liability is found."

This notably generous-to-plaintiffs provision will be recognized instantly as one describing venue choices, not subject-matter jurisdiction. Cf. 28 U. S. C. § 1391 ("Venue generally").

Section 742's final sentence provides:

> "Upon application of either party the cause may, in the discretion of the court, be transferred to any other district court of the United States."

Cf. 28 U. S. C. § 1404 (change of venue to more convenient forum); § 1406 (authorizing transfer, rather than dismissal, when venue is improperly laid). Congress simultaneously added to the Suits in Admiralty Act, the Public Vessels Act, and the Federal Tort Claims Act the transfer provision just set out so that "jurisdictional" dismissals could be avoided when plaintiffs commenced suit under the wrong statute. See S. Rep. No. 1894, 86th Cong., 2d Sess., pp. 2–5 (1960); cf. 28 U. S. C. § 1631 (authorizing transfer, *inter alia,* when review of agency action is sought in the wrong federal court). In short, far from reining in "jurisdiction," § 742's venue and transfer provisions afford plaintiffs multiple forum choices and spare plaintiffs from dismissal for suing in the wrong place or under the wrong Act.[12]

Section 742's critical sentence on service reads:

> "The libelant [plaintiff] shall forthwith serve a copy of his libel [complaint] on the United States attorney for such district and mail a copy thereof by registered mail to the Attorney General . . . ."

Rule 4, as observed at oral argument, see Tr. of Oral Arg. 27–28, provides for dispatch of the summons and complaint to the Attorney General "by registered or certified mail." See *supra,* at 658, and n. 4. The Government's sovereign-immunity waiver, counsel for the United States agreed, did not depend on registered mail service, the sole form of mailing § 742 authorizes; "in this day and age," counsel said, "certified mail would be acceptable." Tr. of Oral Arg. 28–29. But see *post,* at 678, n. 4 ("jurisdiction in [a Suits in Admiralty Act] suit may turn upon the plaintiff's use of registered mail"). It thus appears that several of § 742's provisions are not sensibly typed "substantive" or "jurisdictional." Instead, they have a distinctly facilitative, "procedural" cast.

---

[12] While striving for fidelity to what Congress wrote, see *post,* at 674, 679, the dissent inexplicably writes off many of § 742's words as "largely beside the point," *post,* at 674.

They deal with case processing, not substantive rights or consent to suit.[13]

If the service "forthwith" prescription is not made "substantive" or "jurisdictional" by its inclusion—along with broad venue choices—in § 742, is it a rule of procedure superseded by Rule 4? Before we address that dispositive question, we note a preliminary issue. Rule 4(j), which contained the 120-day prescription at the time Henderson filed suit, was not simply prescribed by this Court pursuant to the Rules Enabling Act. See 28 U. S. C. § 2074 (rules transmitted by Court to Congress "not later than May 1" become effective "no earlier than December 1" of the same year unless Congress otherwise provides). Instead, the Rule was enacted into law by Congress as part of the Federal Rules of Civil Procedure Amendments Act of 1982, § 2, 96 Stat. 2527. See *supra*, at 662. As the United States acknowledges, however, a Rule made law by Congress supersedes conflicting laws no less than a Rule this Court prescribes. See Brief for United States 16, n. 14 ("We agree with petitioner . . . that Section 2072(b) provides the best evidence of

---

[13] Even before admiralty proceedings were placed under the governance of the Federal Rules, Judge Henry Friendly trenchantly observed:

"I cannot believe Congress meant [to render 'jurisdictional' every failure by a libelant to comply with a procedural step outlined in the Suits in Admiralty Act]; I should have supposed that, once Congress gave the basic consent to sue the United States, as it did in the first sentence of [§ 742], it was content to have the courts decide the effect of various procedural lapses in the same manner as 'if such vessel were privately owned or operated.'" *Battaglia* v. *United States*, 303 F. 2d, at 686 (concurring opinion).

Circuit precedent was otherwise, however, and therefore Judge Friendly reluctantly concurred in the "Draconian conclusion" that a 4-month delay in mailing the pleadings to the Attorney General called for dismissal of the case, despite "forthwith" service on the United States Attorney. Cf. Fed. Rule Civ. Proc. 4(i)(3) ("court shall allow a reasonable time" to "cur[e] the failure to serve multiple officers . . . of the United States if the plaintiff has effected service on either the United States attorney or the Attorney General").

congressional intent regarding the proper construction of Rule 4(j) and its interaction with other laws.").

Returning to the dispositive question, we need not linger over the answer. What we have so far said, and the further elaboration below, lead securely to this response: Rule 4 governs summons and service in this case in whole and not in part.

A plaintiff like Henderson, on commencement of an action under the Suits in Admiralty Act, must immediately resort to Rule 4 for instructions on service of process. See *supra*, at 657, and nn. 3, 4. In that Rule, one finds instructions governing, *inter alia*, form and issuance of the summons, service of the summons together with the complaint, who may serve process, and proof of service.[14] The Rule also describes how service shall or may be effected on various categories of defendants,[15] including, in detail, "the United States, and Its Agencies, Corporations, or Officers."[16] All these prescriptions, it is uncontested, apply in Suits in Admiralty Act cases, just as they apply in other federal cases. We see no reason why the prescription governing time for service[17] is not, as

---

[14] Currently, Fed. Rule Civ. Proc. 4(a), (b), (c), and *(l)*.

[15] Currently, Fed. Rule Civ. Proc. 4(e)–(j).

[16] Currently, Fed. Rule Civ. Proc. 4(i); formerly, Fed. Rule Civ. Proc. 4(d)(4). See *supra*, at 658, n. 4; *Kenyon*, 676 F. 2d, at 1232 (Boochever, J., concurring) (noting that § 2 of the Suits in Admiralty Act, 46 U. S. C. App. § 742, specifies mailing "by registered mail to the Attorney General of the United States," and commenting that the Federal Rule, then Rule 4(d)(4), supersedes, allowing "registered or certified mail"). The current Rule— 4(i)—further facilitates service when the United States is a party by permitting the United States Attorney to designate clerical employees to receive process and allowing service on the United States Attorney by mail. See Fed. Rule Civ. Proc. 4(i)(A).

[17] The Government acknowledges the aim of the rulemakers, from the start, to provide "'a uniform and comprehensive method of service for all actions against the United States,'" Brief for United States 19–20, n. 18 (quoting Advisory Committee's Notes on 1937 Adoption of Fed. Rule Civ. Proc. 4, 28 U. S. C. App., p. 641), but tenders a distinction between "method" and "timing" of service, Brief for United States 19–20,

is the whole of Rule 4, a nonjurisdictional rule governing "practice and procedure" in federal cases, see 28 U. S. C. § 2072(a), consistent with the Rules Enabling Act and Federal Rule 82, and rendering provisions like the Suits in Admiralty Act's service "forthwith" requirement "of no further force or effect," § 2072(b). See *Jones & Laughlin Steel, Inc.* v. *Mon River Towing, Inc.*, 772 F. 2d 62, 66 (CA3 1985) (just as Rule 4 "now governs the method of service of process in admiralty actions, as well as service of process on the United States in all civil cases to which it is a party," so the "congressional enactment of a uniform 120-day period for accomplishing service of process" supersedes inconsistent prior law, in particular, "the Suits in Admiralty Act's requirement of forthwith service"); *Kenyon* v. *United States*, 676 F. 2d 1229, 1232 (CA9 1981) (Boochever, J., concurring) ("I can see no logical reason why there should be a different method of service in this one instance [Suits in Admiralty Act cases] in which the United States is a defendant.").[18]

n. 18.   Current Rule 4(i)(3) shows why the suggested separation of "time" from "method" or "manner" in this context is not credible.   That provision, addressing "time" in relation to "manner," instructs:

"The court shall allow a reasonable time for service of process . . . for the purpose of curing the failure to serve multiple officers . . . of the United States if the plaintiff has effected service on either the United States attorney or the Attorney General of the United States."

[18] Judge Boochever, like Judge Friendly, see *supra*, at 668, n. 13, reluctantly concurred in Circuit precedent, which ranked service "forthwith" "a condition precedent to the congressional waiver of the Government's sovereign immunity," *Kenyon*, 676 F. 2d, at 1231.   But he stated cogently the view he would take "if freed from the bounds of *stare decisis*":

"Section 742 does not constitute an integral part of the substantive waiver of sovereign immunity, but is a mere procedural provision necessary at the time of the statute's enactment, to effectuate that waiver.   As such it was superseded by the Federal Rules."   *Id.*, at 1232 (concurring opinion).

Curiously, although the Ninth Circuit, in *Kenyon* and other cases, has typed the Suits in Admiralty Act service "forthwith" provision "jurisdictional," that Court of Appeals has pointed to a remedy for litigants in Henderson's situation: Amend the complaint, even after the 2-year statute

Service of process, we have come to understand, is properly regarded as a matter discrete from a court's jurisdiction to adjudicate a controversy of a particular kind,[19] or against a particular individual or entity.[20]  Its essential purpose is auxiliary, a purpose distinct from the substantive matters aired in the precedent on which the dissent, wrenching cases from context, extensively relies—who may sue,[21] on what claims,[22] for what relief,[23] within what limitations period.[24]

---

of limitations (46 U. S. C. App. § 745) has run, serve the United States Attorney and the Attorney General "forthwith," and by those steps, gain the benefit of the original complaint filing date through the application of the "relation back" provision of Federal Rule of Civil Procedure 15(c). See *Ashland* v. *Ling-Temco-Vought, Inc.*, 711 F. 2d 1431, 1435–1437 (CA9 1983) (allowing such relation back when plaintiff amended a complaint, brought four years earlier under the Federal Tort Claims Act, to assert instead a claim under the Suits in Admiralty Act); cf. Tr. of Oral Arg. 38 (counsel for United States acknowledged that Henderson, who filed his complaint April 8, 1993, could have filed a fresh complaint anytime before August 27 of that year (the date the 2-year statute of limitations expired), and served it "forthwith," thereby avoiding the loss of his claim).

[19] *I. e.*, subject-matter jurisdiction.  See 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3522, p. 78 (2d ed. 1984); Restatement (Second) of Judgments § 11, p. 108 (1982) (defining "subject matter jurisdiction" as the "authority [of the court] to adjudicate the type of controversy involved in the action").

[20] On relationships sufficient to support "jurisdiction over persons," see generally Restatement (Second) of Conflict of Laws §§ 27–32, 35–44, 47–52 (1971 and Supp. 1989).  See also 4 Wright & Miller, Federal Practice and Procedure § 1064.

[21] See *United States* v. *Sherwood*, 312 U. S. 584 (1941) (Tucker Act, allowing contract claims against United States, does not authorize joinder of claims between private parties).

[22] See *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 39 (1992) (Bankruptcy Code § 106(c) does not waive the Government's sovereign immunity from bankruptcy trustee's monetary relief claims).

[23] See *Library of Congress* v. *Shaw*, 478 U. S. 310, 323 (1986) (Government's waiver of immunity from suit for damages does not waive immunity with respect to interest).

[24] See, *e. g.*, *United States* v. *Williams*, 514 U. S. 527, 534, n. 7 (1995); *Block* v. *North Dakota ex rel. Board of Univ. and School Lands*, 461

Instead, the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections.[25]  Seeing service in this light, and in view of the uniform system Rule 4 of the Federal Rules of Civil Procedure provides, we are satisfied that the service "forthwith" provision of Suits in Admiralty Act, 46 U. S. C. App. § 742, has been displaced by Rule 4, and therefore has no current force or effect.

\*　　\*　　\*

For the reasons stated, the judgment of the Court of Appeals affirming the dismissal of Henderson's complaint is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE KENNEDY joins, concurring.

I join the opinion of the Court.  I write separately to make clear that it is not my view, and I do not understand the Court to hold, that no procedural provision can be jurisdictional.  It assuredly is within the power of Congress to condition its waiver of sovereign immunity upon strict compliance with procedural provisions attached to the waiver, with the result that failure to comply will deprive a court of

---

U. S. 273, 287 (1983).  But cf. *Honda* v. *Clark*, 386 U. S. 484 (1967) (Trading with Enemy Act § 34(f) provided a 60-day claim-filing limitation; Court applied traditional equitable tolling principles to preserve petitioners' cause of action where similar suit was filed within 60-day limitation).

[25] See *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 314 (1950) (to qualify as adequate, notice generally must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").  See also Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1134 (1966) (recognizing notice as a matter separate from bases of adjudicatory jurisdiction); 4 Wright & Miller, *supra*, § 1063, at 225 (same).

jurisdiction. For the reasons stated by the Court, I do not think that the legislative scheme here makes the "forthwith" service requirement such a condition.

JUSTICE THOMAS, with whom THE CHIEF JUSTICE and JUSTICE O'CONNOR join, dissenting.

The Suits in Admiralty Act (SAA or Act) entitles the United States to be served with process "forthwith" in all admiralty proceedings brought under the Act. As a statutory condition on the Government's waiver of its immunity, this time restriction on service demands strict compliance and delimits the district court's jurisdiction to entertain suits in admiralty against the United States. The majority's conclusion that this requirement is supplanted by former Federal Rule of Civil Procedure 4(j) (now Rule 4(m)) rests on a misreading of the SAA and is irreconcilable with our sovereign immunity jurisprudence. Because I believe that Congress intended to restrict admiralty suits against the United States to those cases in which the United States receives service of process forthwith, I respectfully dissent.

As a sovereign, the United States "is immune from suit save as it consents to be sued." *United States* v. *Sherwood,* 312 U. S. 584, 586 (1941). "A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block* v. *North Dakota ex rel. Board of Univ. and School Lands,* 461 U. S. 273, 287 (1983). See also *Lehman* v. *Nakshian,* 453 U. S. 156, 160–161 (1981) ("Like a waiver of [sovereign] immunity itself, which must be 'unequivocally expressed,' 'this Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied'" (citations omitted)). The fact that the condition involves a matter of procedure does not affect the analysis, for "in many cases

this Court has read procedural rules embodied in statutes waiving immunity strictly, with an eye to effectuating a restrictive legislative purpose when Congress relinquishes sovereign immunity." *Honda* v. *Clark,* 386 U. S. 484, 501 (1967).

As always, the starting point in interpreting the extent of a waiver of sovereign immunity is the text of the statute. Section 2 of the Act contains the actual waiver. It provides that "[i]n cases where if [a] vessel [of the United States] were privately owned or operated, or if . . . cargo [of the United States] were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States." 46 U. S. C. App. § 742. Section 2 also contains the service provision at issue in this case, which states that a plaintiff suing the United States in admiralty "shall forthwith serve a copy of his libel on the United States attorney for such district and mail a copy thereof by registered mail to the Attorney General of the United States, and shall file a sworn return of such service and mailing. Such service and mailing shall constitute valid service on the United States." *Ibid.* Section 3 of the Act, aptly titled "Procedure in cases of libel in personam," provides that suits under the SAA "shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties." § 743.

The text and structure of the SAA lead me to conclude that Congress intended to allow admiralty suits to proceed against the United States only in cases in which process is served "forthwith." The key to understanding the scheme enacted by Congress lies not so much in Congress' decision to place this service requirement in § 2 as in its decision *not* to address service of process in § 3; for this reason, the majority's sentence-by-sentence analysis of § 2, see *ante,* at 665–668, is largely beside the point. Section 3 provides that the

ordinary rules of procedure governing private parties in admiralty also govern suits under the SAA. But Congress excepted from this provision the service-of-process requirement and placed it in a separate section altogether. This suggests not only that Congress attached greater significance to the requirement that process be served forthwith than to other procedural rules, but, more importantly, that Congress expected process to be served forthwith in SAA cases regardless of the "principles of law and . . . rules of practice obtaining in like cases between private parties." 46 U. S. C. App. § 743.

Even were I not convinced that the SAA's requirement of prompt service is a condition on the Government's waiver of sovereign immunity, I still could not agree with the majority that it clearly is *not* a condition on the waiver. At best, the SAA is ambiguous on this point, and when interpreting the breadth of a waiver of sovereign immunity, ambiguity must always be resolved in favor of the Government. See *United States* v. *Williams*, 514 U. S. 527, 531 (1995). We have consistently reaffirmed "the traditional principle that the Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarge[d] . . . beyond what the language requires." *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 34 (1992) (citations and internal quotation marks omitted). See also *Library of Congress* v. *Shaw*, 478 U. S. 310, 318 (1986). It is at least plausible to interpret the SAA's service provision as a condition on the waiver, and that is enough to justify construing the statute in the Government's favor. Cf. *Nordic Village, supra,* at 37.

Because the SAA's service requirement is best read as a condition on the Government's waiver of sovereign immunity, it necessarily follows that this requirement cannot be superseded by a Federal Rule of Civil Procedure. Sovereign immunity is by nature jurisdictional, *FDIC* v. *Meyer,* 510 U. S. 471, 475 (1994), and the terms of the United States' " 'consent to be sued in any court define that court's jurisdic-

tion to entertain the suit.'" *Ibid.* (quoting *Sherwood*, 312 U. S., at 586). Though the Rules Enabling Act provides that all previously enacted laws that are "in conflict with" the Federal Rules of Civil Procedure "shall be of no further force or effect," 28 U. S. C. § 2072(b), it also expressly provides that the Federal Rules "shall not abridge, enlarge or modify any substantive right," *ibid.* Allowing SAA claims in which process is not served forthwith to proceed against the United States infringes upon the Government's immunity and thereby alters a substantive right in direct contravention of the Rules Enabling Act. Moreover, Federal Rule of Civil Procedure 82 makes clear that the Rules of Procedure "shall not be construed to extend or limit the jurisdiction of the United States district courts." Given the jurisdictional nature of a waiver of sovereign immunity, allowing this suit to proceed also violates Rule 82.

I do not mean to imply that ordinary procedural rules automatically become jurisdictional prerequisites in civil cases simply because the United States is a defendant; they do not. But Congress certainly has the power to impose a procedural requirement as a condition on a waiver of sovereign immunity and to require strict compliance with that condition as a prerequisite to invoking or maintaining the court's jurisdiction. The text and structure of the SAA demonstrate that Congress exercised this power when it enacted the SAA, and "nothing in the . . . rules of civil practice so far as they may be applicable in suits brought in district courts [against the Government] authorizes the maintenance of any suit against the United States to which it has not otherwise consented." *Sherwood, supra,* at 589.[1]

---

[1] For instance, in *United States* v. *Sherwood*, 312 U. S. 584 (1941), we held that the possibility of joinder under the liberal joinder provisions of the Federal Rules does not authorize a district court to hear a claim brought against the Government for breach of contract by a party not specifically authorized to bring suit against the United States under the Tucker Act. Notwithstanding the possibility of joinder in a similar case

The majority rejects the proposition, accepted by four of the five Courts of Appeals that have addressed this issue, that a service requirement can serve as a condition on a waiver of sovereign immunity.[2] This cannot be, the majority concludes, because service is "not sensibly typed 'substantive' or 'jurisdictional,'" and instead has a "'procedural' cast" and "deal[s] with case processing." *Ante,* at 667–668. But the proper inquiry is not whether the condition is in nature "procedural" or "substantive," for we have long maintained that even procedural rules can condition a waiver of sovereign immunity. See *Honda,* 386 U. S., at 501. The fact that Congress has determined to limit the scope of its consent to suit is sufficient to restrict federal-court jurisdiction over the United States, regardless of the nature of the condition Congress has attached. For instance, though no one would claim that failure to satisfy a statute of limitations in a case between private parties would serve as a jurisdictional bar to the plaintiff's suit, we have long held that a statute of limitations attached to a waiver of sovereign immunity functions as a condition on the waiver and defines the limits of the district court's jurisdiction to hear a claim against the United States. See *Williams,* 514 U. S., at 534, n. 7; *Block,* 461 U. S., at 287; *United States* v. *Kubrick,* 444 U. S. 111, 117–118 (1979); *Soriano* v. *United States,* 352 U. S. 270, 271, 273 (1957). See generally 14 C. Wright,

---

between private parties, we explained that "[t]he matter [was] not one of procedure but of jurisdiction whose limits are marked by the Government's consent to be sued," and held that the Government's consent to suit "may be conditioned . . . on the restriction of the issues to be adjudicated in the suit, to those between the claimant and the Government." *Id.,* at 591.

[2] See *United States* v. *Holmberg,* 19 F. 3d 1062 (CA5), cert. denied, 513 U. S. 986 (1994); *Libby* v. *United States,* 840 F. 2d 818 (CA11 1988); *Amella* v. *United States,* 732 F. 2d 711 (CA9 1984); *Battaglia* v. *United States,* 303 F. 2d 683 (CA2), cert. dism'd, 371 U. S. 907 (1962). Only one Circuit has gone the other way. See *Jones & Laughlin Steel, Inc.* v. *Mon River Towing, Inc.,* 772 F. 2d 62 (CA3 1985).

A. Miller, & E. Cooper, Federal Practice and Procedure § 3654, pp. 194–199 (1985).[3] The same is true of the SAA's service requirement. While service of process in a case between private parties may generally be understood to be "a matter discrete from a court's jurisdiction to adjudicate a controversy of a particular kind," *ante*, at 671, a waiver of sovereign immunity conditioned upon a particular method of service would transform what is ordinarily a nonjurisdictional rule into a jurisdictional one.[4]

Once the majority concludes that Congress attached no particular significance to the SAA's requirement that process be served forthwith, the conclusion that Rule 4(j), by operation of the Rules Enabling Act, displaces § 2's service requirement would appear to flow naturally. But that is not the case. As the Government concedes, the Rules Enabling

---

[3] Although we held in *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95–96 (1990), that statutes of limitations in cases brought against the Government are presumptively subject to equitable tolling, we also reaffirmed in that case that a time restriction on suit against the United States "is a condition to the waiver of sovereign immunity and thus must be strictly construed." *Id.*, at 94. *Irwin* did mark a departure from our earlier, and stricter, treatment of statutes of limitations in the sovereign immunity context, but our decision in *United States* v. *Williams*, 514 U. S. 527 (1995), makes clear that statutes of limitations in suits brought against the United States are no less jurisdictional prerequisites than they were before *Irwin*. *Williams* confirmed that a statute of limitations "narrow[s] the waiver of sovereign immunity," 514 U. S., at 534, n. 7, and cited for this proposition *United States* v. *Dalm*, 494 U. S. 596 (1990), which held that failure to file a claim against the Government for a federal tax refund within the statute of limitations operates as a jurisdictional bar to suit.

[4] I recognize that, under my reading of the Act, jurisdiction in an SAA suit may turn upon the plaintiff's use of registered mail, which is also specified in the sentence of § 2 that requires process to be served forthwith. 46 U. S. C. App. § 742. Though this may seem like an odd requirement from our modern perspective, the most sensible textual reading of the Act is still that Congress sought to impose a specific method of service in SAA cases without regard to the rules governing service generally. Congress is free to amend the statute if it determines that the SAA has fallen out of date with modern mailing practices.

Act is "technically inapplicable" in this case, Brief for United States 16, n. 14, because Rule 4(j) was not promulgated by this Court but rather was enacted by Congress, see Pub. L. 97–462, 96 Stat. 2528, and the Rules Enabling Act by its terms nullifies only statutory rules of procedure that conflict with rules promulgated *by the Supreme Court.*

The majority acknowledges the inapplicability of the Rules Enabling Act, *ante,* at 668, but appears to apply the Act nonetheless, *ante,* at 669–670 (citing 28 U. S. C. § 2072(b)). The majority is not entirely clear on this point, however, and it appears that the majority may instead find that Rule 4(j) effected an implied repeal of § 2's service requirement independent of the Rules Enabling Act. See *ante,* at 668 ("[A] Rule made law by Congress supersedes conflicting laws no less than a Rule this Court prescribes"). The majority may mean by this statement only that the Rules Enabling Act pertains equally to Rules of Procedure promulgated by this Court *and* by Congress, but I am reluctant to assume, absent clearer indication, the Court's reliance on a method of statutory construction that allows us to rewrite a statute when the text does not address the specific situation before us or when it does not generate an outcome that we desire. Regardless of the rubric under which this case is actually decided, the Court, in my opinion, reaches the wrong conclusion. In contrast to the rest of the procedures that apply in SAA cases, the Act requires a specific method of service even though the procedures that govern similar cases may differ. This, in combination with the critical fact that this case involves a waiver of sovereign immunity, leads me to conclude that Rule 4(j) does not displace the service requirement of § 2 either under the Rules Enabling Act or as an implied repeal.

The only question remaining is whether Henderson served his complaint on the United States "forthwith." There is no reasonable argument that he did. Henderson served his complaint on the United States Attorney 148 days after he

filed it in the District Court. Although we have never undertaken to define "forthwith" as it is used in the SAA, it is clear that the term "connotes action which is immediate, without delay, prompt, and with reasonable dispatch." *Amella* v. *United States,* 732 F. 2d 711, 713 (CA9 1984) (citing Black's Law Dictionary 588 (5th ed. 1979)). See also *Dickerman* v. *Northern Trust Co.,* 176 U. S. 181, 192–193 (1900). Whatever problems Henderson may have had in serving his complaint upon the United States, the 148-day delay can hardly be described as process served forthwith under even the most generous definition of the term. I respectfully dissent.