**FEDERAL TRADE COMMISSION,**
**Plaintiff,**

v.

**1263523 ONTARIO, INC. d/b/a Consumer Credit Services, an Ontario Corporation, Donald M. Davies, Lloyd Charles Prudenza, and David Seymour Wells, Defendants.**

**No. 99 CIV.8679 LTS MHD.**

United States District Court,
S.D. New York.

June 4, 2002.

Carole A. Paynter, Rhonda J. McLean, Michael Joel Bloom, New York City, for Federal Trade Com'n.

## MEMORANDUM OPINION AND ORDER

SWAIN, District Judge.

Plaintiff, the Federal Trade Commission ("FTC"), in this action brought pursuant to Sections 13(b) and 19(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, charges defendants 1263523 Ontario, Inc. d/b/a Consumer Credit Services ("Consumer Credit"), an Ontario corporation, Donald M. Davies, Lloyd Charles Prudenza, and David Seymour Wells ("Defendants") with violations of Section 5 of the FTC Act, 15 U.S.C. Section 45, and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, promulgated pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act 15 U.S.C. §§ 6101 *et seq.*, alleging deceptive marketing of advance fee credit cards. Before the Court is Plaintiff's motion for a default judgment against Defendants, including permanent injunctive relief and consumer redress.

The Court has considered thoroughly all submissions related to this motion. For the following reasons, Plaintiff's motion is granted, and damages and costs are awarded to the extent set forth below.

According to the complaint, defendant Donald M. Davies is the President of defendant Consumer Credit. Defendant Lloyd Charles Prudenza is the Secretary/Treasurer of Consumer Credit. Defendant David Seymour Wells is a director of Consumer Credit. All three defendants represented Consumer Credit in dealings with Electronic Financial Group, a Texas entity that processes preauthorized debits of consumers' checking accounts for defendant Consumer Credit. *See* Declaration of Jerry Federico, Ex. B to Pl.'s Mot. for Default Judgment.

On August, 5, 1999, Plaintiff filed a complaint, seeking a permanent injunction and other equitable relief against Defendants. On August 8, 1999, Plaintiff filed an application for a Temporary Restraining Order ("TRO") to halt immediately the Defendants' allegedly deceptive marketing of credit cards. The FTC Act authorizes service on a defendant in an FTC enforcement action "wherever [the defendant] may be found." 15 U.S.C.A. § 53(b) (West 1997). Service of process is to be accomplished by personal service, by leaving a copy of the process at the residence or principal office or place of business of the defendant, or by mailing a copy of the process by registered or certified mail to the defendant's residence, principal office or principal place of business address. 15 U.S.C.A. § 53(c) (West 1997). The record indicates that, on or about August 25, 1999, there was an unsuccessful attempt to serve Defendants with the summons and complaint filed in this action. Plaintiff proffered evidence that it made several attempts to effect personal service on the Defendants, all of whom resided in Canada, through the efforts of the Royal Canadian Mounted Police ("RCMP"). *See* Aff. of Ralph Reginald King, attached to Judge Martin's Order dated August 19, 1999. The RCMP attempted to effect personal service upon the Defendants at their last

known residences, however, Defendants evaded service and personal service was not effectuated. *Id.* On August 31, 1999, the Court granted Plaintiff's application for a preliminary injunction and issued an order permitting substituted service at the Defendants' last known residences by first class mail. In accordance with that Order, on or about September 21, 1999, the Defendants were served with a copy of the summons and the complaint. *See* Clerk's Cert. dated May 9, 2000. The record indicates that, since being served with these documents, Defendants have failed to answer or defend themselves in this action. On May 5, 2000, the Clerk of the Court entered an Order of Default against Defendants. *See* Clerk's Cert., dated May 9, 2000, Ex. A to Declaration of Carole A. Paynter.

This Court has jurisdiction of the subject matter of this case and jurisdiction over the parties pursuant to the FTC Act, 15 U.S.C. Section 53, which empowers this Court to grant injunctive and other equitable relief to prevent and remedy violations of any provision of law enforced by the FTC and authorizes service in an action brought by the FTC wherever the defendant "may be found." 15 U.S.C.A. § 53(b) (West 1997); *see* Judge Martin's Ex Parte Temporary Restraining Order ¶ 1. Pursuant to Rule 55 of the Federal Rules of Civil Procedure, this Court may, when a default has been entered against a party, enter a judgment by default upon application by the Plaintiff. *See FTC v. Alliance Communication Inc.*, No. 96 Civ. 0568(DLC), 1996 WL 812939, at *1 (S.D.N.Y. Nov.6, 1996).

██ "[T]he core function of service is to supply notice of the pendency of a legal action, in a matter and a time that afford the defendant a fair opportunity to answer the complaint and present defenses and

objections." *Henderson v. United States,* 517 U.S. 654, 672, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996), *quoted in Citadel Management, Inc. v. Telesis Trust, Inc.,* 123 F.Supp.2d 133, 145 (S.D.N.Y.2000). An entry of default judgment should be made only where there was willful default, such that the failure to answer was more than mere negligence or carelessness. *See SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998).

■ In deciding a motion for default judgment, the Court considers the following three factors: 1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *See Mason Tenders District Council v. M & M Contracting & Consulting,* 193 F.R.D. 112, 114–15 (S.D.N.Y.2000). Dispositions of motions for default judgments are left to the sound discretion of the district court. *See Shah v. New York State Dep't of Civil Service,* 168 F.3d 610, 615 (2d Cir.1999). Entry of default constitutes an admission of all well-pleaded allegations of the complaint by the defaulted party, except those relating to damages. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

■ In light of all the circumstances previously outlined, the Court finds that denial of this motion would be unfairly prejudicial to Plaintiff. Defendants, having failed to respond in any way to the summons and complaint or the instant motion, or otherwise to make any appearance in this action and having failed to provide any explanation for their failure to defend, have defaulted willfully. Since Defendants have failed to proffer any defense and are therefore deemed to have admitted the well-pleaded allegations of the complaint,

other than those as to the amount of damage (Fed.R.Civ.P. 8(d)), the second factor—whether Defendant has a meritorious defense—is not at issue. Thus, all of the facts alleged in Plaintiff's complaint are, as a matter of law, deemed admitted by Defendants, including the specific allegations of misrepresentations set forth in Count One and Three of the complaint, the Telemarketing Sales Rules ("TSR") violation detailed in Count Two of the Complaint, the material omissions alleged in Count Four of the Complaint, and the allegations that the individual defendants each formulated, directed, controlled or participated in the acts and practices of defendants' consumer credit services. (Compl.¶¶ 6–8).

■ Plaintiff seeks a permanent injunction. The FTC Act provides that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." 15 U.S.C. § 53(b). Violation of Section 5 of the FTC Act, 15 U.S.C. Section 45, constitutes a "proper" case for the imposition of a permanent injunction. *See FTC v. World Travel Vacation Brokers, Inc.,* 861 F.2d 1020, 1029 (7th Cir.1988); *FTC v. The Crescent Publishing Group,* 129 F.Supp.2d 311, 320–21 (S.D.N.Y.2001); *FTC v. Alliance Communication Inc.,* 1996 WL 812939, at *1. Misrepresentations of material facts made to induce the purchase of goods or services constitute unfair or deceptive acts or practices and are prohibited by Section 5(a) of the FTC Act. *See FTC v. The Crescent Publishing Group,* 129 F.Supp.2d at 321. Plaintiff has submitted the declarations of 18 U.S. consumers, each of whom paid the Defendants $159 per credit card based on the Defendants' representations that issuance of the cards was guaranteed. *See* Exhibits to Pl.'s Ex Parte Motion for a TRO. The victims have not received the guaranteed credit cards or refunds that Defendants represented they would be

able to receive. Thus, Plaintiff has presented clear, uncontroverted evidence that Defendants violated the FTC Act by making material misrepresentations about the product they were marketing and selling to consumers. *See* Exhibits to Pl.'s Ex Parte Motion for a TRO.

The evidence proffered also demonstrates that Defendants further violated the FTC Act by infringing upon a number of the TSR's provisions. The TSR prohibits telemarketers and sellers from, *inter alia*, requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person. 16 C.F.R. § 310.4(a)(4) (2002). The TSR also prohibits telemarketers and sellers from misrepresenting any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer and from misrepresenting any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies. 16 C.F.R. § 310.3(a)(2)(iii)-(iv) (2002). The TSR further requires sellers and telemarketers to disclose, in a clear and conspicuous manner, before a customer pays for goods or services offered, all material restrictions, limitations or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer, 16 C.F.R. § 310.3(a)(1)(ii) (2002), and requires sellers and telemarketers to disclose, in a clear and conspicuous manner, before a customer pays for goods or services offered, a statement of all material terms and conditions of their refund, cancellation, exchange, or repurchase policy, if the seller or telemarketer makes a representation about such policy, 16 C.F.R. § 310.3(a)(1)(iii) (2002). Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. Section 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. Section 57a(d)(3), violations of the TSR constitute unfair or deceptive acts or practices in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. Section 45(a). Through their fraudulent marketing scheme, Defendants violated the TSR and the FTC Act.

Considering the fact that preliminary injunctive relief has already been ordered against the Defendants in this cause, the Court now determines, under the circumstances of this case, that a permanent injunction is necessary and appropriate to protect consumers. This is an appropriate remedy even though Plaintiff acknowledges, on information and belief, that the Defendants are no longer engaging in the deceptive marketing scheme. *See* Mem. in Supp. of Pl.'s Mot. for Entry of Default Judgment against Defs. at 9. "It is settled that an action for an injunction does not become moot merely because the conduct complained of was terminated, if there is a possibility of recurrence, since otherwise the defendants 'would be free to return to' (their) old ways." *Allee v. Medrano*, 416 U.S. 802, 811, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). *See also Fedders v. FTC*, 529 F.2d 1398, 1403 (2d Cir.1976), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976) ("The fact that [defendant] may have discontinued the offending practice before the commission issued the complaint ... does not bar a cease-and-desist order, where the public interest otherwise requires it.") As Defendants have defaulted and failed to show that there is no possibility that the alleged offending conduct will recur, the fact that Defendants have ceased the behavior that prompted this action does not preclude issuance of an injunction to protect the public against a recurrence of the behavior. Given Defen-

dants' engagement in fraudulent, deceptive trade practices, the failure of prior enforcement efforts in requiring lawful activity and stopping unlawful activity, and the likelihood of future violation, there is a cognizable danger that, in the absence of an injunction enjoining Defendants, they will continue to violate the law. Thus, a permanent injunction is necessary to protect the public from further violations of the FTC Act.

Plaintiff has also requested that the Court order judgement for consumer redress to the victims of Defendants' misrepresentations. The amount of damages for which Defendants are liable must be established by proof before the Court. *See Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974). Under the FTC Act, the Court has the power to "grant such relief as the court finds necessary to redress injury to consumers" resulting from deceptive acts or practices. 15 U.S.C. § 57b(b); *see FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir.1993). Plaintiff "need[s] not prove that every consumer actually relied upon the misrepresentations to prevail." *FTC v. Five–Star Auto Club, Inc.* 97 F.Supp.2d 502, 530 (S.D.N.Y.2000). The central issue is whether the seller's misrepresentations tainted the customer's purchasing decisions. *FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991). "A presumption of actual reliance arises once the [FTC] has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product." *FTC v. Figgie Int'l, Inc.*, 994 F.2d at 605–06.

Plaintiff's evidence supports a presumption that the fraudulent statements induced customers to pay for the credit cards. Plaintiff has presented evidence that the Defendants induced customers to pay an advance fee for a credit card through the misrepresentations made in the course of the sale. *See* Exhibits to Pl.'s Ex Parte Motion for a TRO. The FTC has presented evidence of numerous complaints by victims who never received a credit card from Defendants after paying the fee: 190 by victims who complained to law enforcement authorities and an additional 140 by victims who complained to First Consumers National Bank, one of the bank's referenced in Defendants' booklet. *See* Paynter Decl., ¶ 4; Hasson Decl., ¶ 3, Exs. A and B. Moreover, FTC has proffered the declaration of Jerry Federico, president of Electronic Financial Group, the Texas firm that processed electronic debits for the Defendants. *See* Declaration of Jerry Federico, Ex. B to Pl.'s Mot. for Default Judgment ¶ 4. Jerry Federico testifies that Defendants have been Electronic Financial Group's clients since November 1997 and that he has been in contact with defendants David Seymour Wells, Lloyd Charles Prudenza and Donald M. Davies regarding daily preauthorized transfers of funds from consumers. *Id.* According to Jerry Federico, as of July 1999 Electronic Financial Group had "processed 71,942 preauthorized transfers or a total of $10 million (US) on behalf [of defendant] Consumer Credit Services." *Id.* Defendants, by defaulting, have failed to rebut the presumption of actual reliance on the misrepresentation.

■■■■ Fraud in the selling of the product entitles consumers to full refunds. *See FTC v. Figgie Int'l, Inc.*, 994 F.2d at 606. Here, no consumer received a credit card or a refund from the Defendants. Damages are evaluated by the amount of gross sales that resulted from such sale. *McGregor v. Chierico*, 206 F.3d 1378, 1388–89 (11th Cir.2000). Defendants therefore are liable for the full amount of actual consumer loss, here the gross amount of advance fees paid to Defen-

**224**

dants. *Id.; see also FTC v. Five–Star Auto Club, Inc.,* 97 F.Supp.2d at 534; *FTC v. Verity Int'l, Ltd.,* No. 00 Civ. 7422(LAK), 2002 WL 485706 at *·11 (S.D.N.Y. April 1, 2002). The FTC has proffered sufficient, uncontroverted evidence that Defendants collected $10 million in fees from consumers.

Judgement shall therefore be entered against all Defendants, jointly and severally, in the amount of $10,000,000 and a permanent injunction issued, all substantially as set forth in Plaintiff's Proposed Judgment for Permanent Injunction and Consumer Redress.

SO ORDERED.