**Stephen J. MCISAAC,**

v.

**John FORD, et al.**

**No. Civ.A. 01–CV–11025–RGS.**

United States District Court,
D. Massachusetts.

April 1, 2002.

Stephen McIsaac, Everett, MA, pro se.

Stephen G. Cox, Asst. Corporation Counsel City of Boston Law Dept., Boston, MA, for Defendants.

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

STEARNS, District Judge.

On June 15, 2001, Stephen McIsaac filed this Complaint against his estranged wife Diane Gorski, the City of Boston and Police Commissioner Paul Evans, and three Boston Police officers (Ford, Cheevers, and Leary). The Complaint alleges that McIsaac was illegally arrested by the Boston police on June 17, 1998, while he was attempting to visit his daughter under the terms of a Probate Court decree. All of the defendants except Gorski have moved to dismiss the Complaint because of McIsaac's failure to make timely service.[1] Cheevers and Ford were served two days after Rule 4(m)'s 120 day deadline expired, while the City and Evans were served three days late.[2] Leary was never served.[3]

Under Rule 4(m), the Complaint should have been served no later than October 15, 2001.[4] According to McIsaac, on October

---

1. Any dismissal is necessarily with prejudice as the statute of limitations has run on all of McIsaac's claims.

2. The Complaint improperly names Evans in his official capacity. *See Brandon v. Holt,* 469 U.S. 464, 471–472, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

3. Gorski has not filed a motion to dismiss, although she also appears to have been untimely served.

4. The 1993 Amendments to the Federal Rules of Civil Procedure imported most of the text of prior Rule 4(j) into Rule 4(m). The Rule now reads as follows:

15, 2001, he asked the U.S. Marshal's Office to make service of the Complaint that day. He was told that it would be impossible. McIsaac then went to the Boston Sheriff's Office where again he was told that same-day service was not possible. McIsaac did not at that point seek an extension of time to make service. Sheriff's deputies eventually served the four previously identified Boston defendants on October 17 and 18, 2001.[5]

McIsaac, citing *Benjamin v. Grosnick,* 999 F.2d 590 (1st Cir.1993), argues that his failure to make timely service is excusable because of his frustrated efforts to arrange same-day service. Prior to the 1993 Amendments, a plaintiff who failed to make timely service could avoid a dismissal only by a showing of good cause. *Id.,* at 591 ("Under Fed.R.Civ.P. 4(j), if a plaintiff fails to properly serve a named defendant within 120 days after filing a complaint, he must show 'good cause why such service was not made within that period' or face dismissal.").

[G]ood cause is likely (but not always) to be found when the plaintiffs failure to complete service in timely fashion is a result of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are under-

standable mitigating circumstance, or the plaintiff is proceeding pro se or in forma pauperis. Pro se status or any of the other listed explanations for a failure to make timely service, however, is not automatically enough to constitute good cause for purposes of Rule 4(m).

Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1137, at 342 (2002).[6]

In *Grosnick,* the Court found that a delay in making service was excusable where plaintiffs had "completed all of the steps within their power necessary to effectuate such service" and where responsibility for the delay was attributable to the malfeasance of the process server. *Id.,* at 592.[7] By contrast, McIsaac made no effort to effect service until the last possible day. Last minute attempts at service, absent some explanatory justification, do not establish good cause. *See, e.g., Sullivan v. Mitchell,* 151 F.R.D. 331, 333 (D.C.Ill.1993) (no good cause shown where "[p]laintiff gave no thought to personal service until a few days before the expiration of the 120 day period .... [and] failed to move for a Rule 6(b) extension of time to enlarge the period for service either prior or subsequent to the 120 day period."); *Cox v. Arizona League of Professional Baseball Clubs, Inc.,* 151 F.R.D. 436, 438 (M.D.Fla. 1993) (no good cause shown where "[p]laintiff[ ] continual[ly] delay[ed] to take active

Time Limit for Service. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

5. McIsaac laments the fact that the Boston Sheriff's Office, unlike the City of Cambridge Sheriff's Office through which he attempted to make service on Gorski, does not offer expedited service.

6. McIssac makes no claim that he was unaware of the 120 day rule or that he was misled about the consequences of failing to make timely service by court personnel, the defendants, or the process servers.

7. Moreover, the defect in service was not discoverable by the *Grosnick* plaintiffs because the deputy sheriff's sworn representations in the return were false.

steps toward obtaining proper service, until literally 'the eleventh hour.' "). Here, McIsaac has failed to offer any explanation, much less a credible one, for his terminal procrastination.

Under the predecessor Rule 4(j), the absence of good cause was conclusive of the matter. The 1993 Amendments, however, were meant to introduce a more liberal regime, particularly to benefit pro se litigants whose good faith missteps in effecting service might unfairly deprive them of their day in court. At first blush, the language of Rule 4(m) appears to incorporate Rule 4(j)'s strict "good cause" requirement. But the Advisory Committee's Notes make clear that Rule 4(m) does not forbid a court from granting an extension of time to make service in exceptional cases even in the absence of good cause.[8] *See Henderson v. United States,* 517 U.S. 654, 662, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) (citing the relevant passage in the Notes in *dicta*). While *Grosnick* remains the controlling law in this Circuit, I will assume that if the issue were squarely presented, the First Circuit would follow *Henderson* in interpreting Rule 4(m) as dispensing with Rule 4(j)'s mandatory good cause requirement. This does not mean, however, that the existence or non-existence of good cause is simply to be ignored.

> In determining what is and what is not good cause, the federal courts obviously are obligated to balance the clear intent of Rule 4(m) and the desire to provide litigants their day in court. Insisting on a timely service of process and assuring litigants a just adjudication on the merits of an action are not inconsistent, but over-emphasis on either could lead to undesired consequences. If good cause under Rule 4(m) is measured too restric-

tively, then the risk is that many good faith plaintiffs may be treated harshly. Conversely, if good cause extensions are given too freely, then the risk is the emasculation of Rule 4(m) and the defeat of its purpose.

Wright & Miller, *supra* § 1137, at 373–374.

It is true that the Advisory Committee's Notes specifically refer to the running of the statute of limitations as one of the exceptional circumstances in which a court would be justified in granting an extension even absent a showing of good cause. But I am of the view that this exceptional relief is appropriate only in circumstances where an extension of time is sought prior to the expiration of Rule 4(m)'s deadline, or where a pro se litigant can show confusion on his part, either because of his unfamiliarity with the rules, or because of his reliance on the misleading advice of others. McIsaac knew the rules, as evidenced by his attempts to have service expedited on the last available day. The risk of a dismissal with prejudice is one that he assumed by waiting until two days before the expiration of the statute of limitations to file his Complaint and then doing nothing until the last minute to have it served.[9]

### ORDER

For the foregoing reasons, the motion to dismiss is *ALLOWED* as to Evans, the City of Boston, Cheever, Ford, and Leary. McIsaac will have twenty-one days from the date of this Order to show cause why the claims asserted against Gorski should not be dismissed for lack of jurisdiction.

SO ORDERED.

---

**8.** If good cause is shown, a court must grant the extension.

**9.** There is no suggestion that McIsaac was frustrated in his efforts to investigate and develop the facts underlying the Complaint.