**UNITED STATES of America, Plaintiff,**

v.

**Barry A. TOBINS, et al., Defendants.**

**Civil Action Lead No. 06–10516–JGD.**

United States District Court, D. Massachusetts.

March 2, 2007.

Robert J. Kovacev, Stephen J. Turanchik, U.S. Department of Justice, Washington, DC, for Plaintiff.

Scott P. Lopez, Law Office of Scott P. Lopez, Jerrold I. Panich, Boston, MA, for Defendants.

Saundra Tobins, Centerville, MA, pro se.

## ORDER

YOUNG, District Judge.

The Court adopts the Magistrate's Order and confirms the Motion to Dismiss is Denied.

## MEMORANDUM OF DECISION AND ORDER *ON DEFENDANT'S MOTION TO DISMISS*

DEIN, United States Magistrate Judge.

### I. *INTRODUCTION*

In the above-captioned consolidated actions, the United States of America ("United States" or "Government") is seeking to obtain a judgment against defendant Barry A. Tobins based on his alleged failure to pay over $1.6 million in income taxes, and to foreclose on tax liens against two Massachusetts properties owned by Mr. Tobins and his wife, defendant Saundra Tobins. Presently before the court is "Defendant Barry A. Tobins' Motion to Dismiss" (Docket No. 20), by which Mr. Tobins is seeking dismissal of the consolidated actions against him, pursuant to Fed. R.Civ.P. 4(a), 4(b), 4(m), 12(b)(2), 12(b)(4) and 12(b)(5), for lack of personal jurisdic-

tion, insufficient process, and insufficient service of process. At issue is whether the Government effectuated proper and timely service of process upon Mr. Tobins, and if not, whether the plaintiff has established good cause for its failure or is otherwise entitled to an extension of the time for service. For the reasons detailed below, this court finds that even if service of process was defective, the government has shown good cause for any failure to serve Mr. Tobins in a timely manner. This court further finds that even if no good cause had been shown, an extension of the time to complete service of process is warranted by the circumstances of this case. Therefore, Mr. Tobins' motion to dismiss is DE-NIED. Because the Government personally served process upon Mr. Tobins on October 16, 2006 in accordance with Fed. R.Civ.P. 4(e), the deadline for completing service of process shall be extended retroactive to that date.

## II. STATEMENT OF FACTS[1]

### The Government's Initial Efforts to Locate Mr. Tobins

Prior to initiating a lawsuit against Mr. Tobins, James J. Kelly, a Revenue Officer at the Internal Revenue Service ("IRS") in Quincy, Massachusetts, conducted an investigation relating to the IRS's efforts to collect taxes allegedly owing from Mr. Tobins. (Pl.'s Ex. 1 (Declaration of James J. Kelly) ¶¶ 1–3). In connection with that investigation, Officer Kelly determined that Mr. Tobins and his wife, defendant Saundra Tobins, owned two properties in Massachusetts. (Pl.'s Ex. 1 ¶ 3). Officer Kelly understood that the Tobins resided at one of those properties, located at 1110 Craigville Beach Road, Centerville, Massachusetts. (Id.). However, in October 2005, after Officer Kelly initiated contact with Mr. Tobins' attorney regarding the Government's efforts to collect the outstanding tax obligations, he was informed that Mr. Tobins had moved to Florida. (Pl.'s Ex. 1 ¶ 4). On October 17, 2005, Mr. Tobins' counsel notified Officer Kelly by facsimile that Mr. Tobins was residing at 255 Golf Club Drive in Key West, Florida. (Id.).

Officer Kelly sought to confirm Mr. Tobins' new address information by submitting postal tracers to the United States Postal Service to determine where Mr. Tobins' mail was delivered. (Pl.'s Ex. 1 ¶ 5). The postal tracers revealed that Mr. Tobins' mail was being delivered to both 255 Golf Club Drive in Key West and 1110 Craigville Beach Road in Centerville, and that no forwarding address had been provided for the Centerville address. (Id.). Officer Kelly believed on the basis of this information that Mr. Tobins maintained an abode at both locations. (Id.).

---

1. The facts are derived from the following: (1) exhibits attached to the "Memorandum of Law in Support of Defendant Barry A. Tobins' Motion to Dismiss" (Docket No. 21) ("Def.'s Ex. ___"); (2) exhibits attached to the "United States' Opposition to Defendant Barry A. Tobins' Motion to Dismiss" (Docket No. 22) ("Pl.'s Ex. ___"); (3) the Affidavit of Alan M. Sorota ("Sorota Aff.") (Docket No. 25); (4) the Affidavit of Scott P. Lopez in Support of Defendant's Motion to Dismiss ("Lopez Aff.") (Docket No. 26); and (5) the Second Affidavit of Barry A. Tobins in Support of His Motion to Dismiss ("2d Tobins Aff.") (Docket No. 27).

These documents, which consist of affidavits, court orders, pleadings filed with the court and other public records, are properly before this court on the defendant's motion to dismiss. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993) (court may consider official public records on a motion to dismiss without converting motion into one for summary judgment); *Palandjian v. Pahlavi*, 586 F.Supp. 671, 672 (D.Mass.1984) (on motion to dismiss for lack of personal jurisdiction, court may consider affidavits relevant to the question of jurisdiction).

In November 2005, Officer Kelly also spoke with Mrs. Tobins at the Centerville address. (Pl.'s Ex. 1 ¶ 6). According to Officer Kelly, Mrs. Tobins said that she received mail for Mr. Tobins at the 1110 Craigville Beach Road address, and that she forwarded it to Mr. Tobins when he was in Florida. (*Id.*). However, Mrs. Tobins declined to provide an address for Mr. Tobins in Florida and to answer Officer Kelly's questions as to whether Mr. Tobins had returned to Massachusetts since leaving for Florida. (Pl.'s Ex. 1 ¶ 7). Based on his conversation with Mrs. Tobins, Officer Kelly inferred that Mr. Tobins returned to Massachusetts and lived at the Centerville address with his wife "for at least several months out of the year." (*Id.*).

### *The Florida Litigation*

On December 20, 2005, the United States filed a civil action against Mr. Tobins in the United States District Court for the Southern District of Florida. (Def.'s Ex. A). By its Complaint, the United States was seeking a judgment against Mr. Tobins for his alleged failure to pay over $1.6 million in federal income taxes during the time period between 1986 and 2001. (*Id.*). On that same date, the Deputy Clerk of the Florida court issued a summons to Mr. Tobins at 255 Golf Club Drive, Key West, Florida, which was the address alleged by the United States in its Complaint. (Def.'s Ex. A ¶ 3; Def.'s Ex. B). It was also the address that Mr. Tobins' attorney had provided to the Government and which had been confirmed by the Postal Service just two months earlier. Nevertheless, as detailed below, the United States' efforts to serve Mr. Tobins at this address were unsuccessful.

Mr. Tobins claims that at the time the Complaint was filed in Florida, he was residing at 255 Golf Club Drive in Key West and had been residing in Key West permanently since moving there from the 1110 Craigville Beach Road address in January 2004. (Def.'s Ex. D ¶¶ 2–3; 2d Tobins Aff. ¶¶ 2, 9). However, according to Mr. Tobins, sometime in January 2006, he moved to a different location in Key West, where he has continued to reside since that time. (Def.'s Ex. D ¶¶ 3–4; 2d Tobins Aff. ¶ 3). The parties dispute whether Mr. Tobins was intentionally trying to evade service of process by concealing his new address from the Government.

Mr. Tobins has presented evidence that he filed a change of address form with the United States Postal Service on about January 15, 2006 in connection with his move.[2] (Def.'s Ex. D ¶ 4; 2d Tobins Aff. ¶ 5). However, there also is evidence in the record that in February 2006, the Florida court sent an order to Mr. Tobins at the 255 Golf Club Drive address, and the order was returned to the court as undeliverable rather than forwarded to the new address. (Def.'s Ex. J ¶ 4). Moreover, there is uncontroverted evidence that several months after Mr. Tobins moved, his counsel submitted annual reports on his behalf to the Florida Secretary of State certifying that 255 Golf Club Drive was his current address. (Pl.'s Exs. 3 & 4). Apparently, Mr. Tobins had failed to advise his counsel that he had moved, resulting in false filings being made. (*See* Sorota Aff. ¶¶ 6–7).

On January 31, 2006, the United States filed a motion in the Florida litigation in which it notified the court that it had so far been unable to serve Mr. Tobins and acknowledged that Mr. Tobins would need to be served by April 19, 2006 in order to

---

2. A document from the United States Postal Service confirming Mr. Tobins' change of address indicates that his mail should have been forwarded to his new address in Key West beginning on February 1, 2006. (*See* Attachment to Def.'s Ex. D)

comply with the requirement of Fed. R.Civ.P. 4(m) that service of process be made within 120 days after filing the complaint. (Def.'s Ex. F ¶¶ 2, 4). Thereafter, the court scheduled a status hearing for February 8, 2006. (Def.'s Ex. G). According to the minutes from that hearing, "[t]he Government represented to the Court [that] the paperwork has been sent to the process server in Key West, and service should be effectuated by next week." (Def.'s Ex. H).

The court also set a scheduling conference for March 22, 2006. (Def.'s Ex. I). However, on March 8, 2006, the United States filed a motion with the Florida court in which it sought to continue the March 22 scheduling conference. (*See generally* Def.'s Ex. J). In its motion, the Government represented that it had unsuccessfully attempted to serve Mr. Tobins at the Golf Club Drive address on two occasions. (Def.'s Ex. J ¶¶ 6–7). The first attempt was made by a private process server hired by the United States, and the second attempt was made by a Revenue Officer, who determined that Mr. Tobins had abandoned the property. (*Id.*). The Government further stated:

The Internal Revenue Service has since made numerous efforts to identify an updated address for the defendant, but has thus far been unable to do so. Such efforts include renewed U.S. Postal Service tracers as well as searches of records of the Massachusetts Department of Motor Vehicles and wage reports ... The plaintiff next intends to attempt service at two separate pieces of real property owned by the defendant in Massachusetts. The plaintiff will also

attempt to secure information from the defendant's former spouse.[3]

(Def.'s Ex. J ¶¶ 8–9). In an affidavit supporting the motion, counsel for the Government stated that "Revenue Officer Jay Kelly has also requested an updated U.S. Postal Service tracer for an accurate Florida address, but has not yet received a response." (Declaration of Richard D. Euliss attached to Def.'s Ex. J at ¶ 7).

On March 10, 2006, the Florida court issued an Order Canceling Scheduling Conference and Notification of Potential Dismissal. (Def.'s Ex. K). The court stated in its order that

the efforts the Government intends to take in the future to effectuate service, while commendable, should have been exercised prior to this time to move the litigation forward to resolution. The Court has previously made quite clear at the scheduling conferences that were held that the Plaintiff would be expected to exercise its considerable resources to effectuate service.

(*Id.*). The court also informed the Government that the "case will be DISMISSED on April 28, 2006, if service has not been effectuated as required by Fed.R.Civ.P. 4(m)." (*Id.*).

### The Massachusetts Action

On March 23, 2006, the United States filed another action, captioned *United States of America v. Barry A. Tobins, et al.*, Civil Action No. 06–10516–JGD, in this court against Mr. Tobins, his wife Saundra Tobins, and others having a potential interest in the real properties owned by the Tobins in Massachusetts.[4] (Complaint (Docket No. 1)) (the "Foreclosure Action").

---

**3.** The Government later determined that Mr. Tobins remained married to his wife, and that she still resided in Massachusetts. (Def.'s Ex. L at 2 n. 2).

**4.** In addition to the Tobins, the named defendants in Civil Action No. 06–10516 include Citizens Bank of Massachusetts, the Town of Barnstable, H.N. Hartwell & Son, Inc. and the Town of Sharon.

In this action, the Government is seeking to foreclose on tax liens against the two properties owned by Mr. and Mrs. Tobins in Massachusetts, including the property at Craigville Beach Road in Centerville and a property located in Sharon. (*Id.*). The tax liens that serve as the basis for the Foreclosure Action arise from the same allegedly unpaid tax assessments at issue in the case that was filed in Florida. (*Compare id.* ¶ 9 with Def.'s Ex. A ¶ 4).

### Transfer of the Florida Case to Massachusetts

Also on March 23, 2006, the United States filed a motion in the Florida action to transfer that case to this court. (Def.'s Ex. L). The parties dispute whether the Government misled the Florida court into believing that Mr. Tobins was residing in Massachusetts in order to obtain a transfer order and avoid dismissal of the Florida lawsuit. In its motion, the Government represented that it "has made numerous albeit unsuccessful attempts to find an alternative Florida address for the defendant." (Def.'s Ex. L at 1). It also stated in relevant part:

> The Government filed the foreclosure suit in the District of Massachusetts because it is the situs of the real property subject to foreclosure and because the defendant's significant local ties suggest that he will be amenable to service of process. For example, Massachusetts is where the defendant's wife resides and where the defendant lived and raised his children. The defendant's ownership of Massachusetts real estate is another tie to the proposed transferree district. Finally, a Massachusetts postal tracer issued on March 28, 2006 indicates that the defendant is still receiving mail at his property in Centerville, Massachusetts.

(Def.'s Ex. L at 2). The Government also represented to the court that "there is no personal jurisdiction over the defendant [in Florida] because he cannot be found in this judicial district[,]" and that the District of Massachusetts would be a proper venue because, among other things, Mr. Tobins "has significant ties to this state and may be found to reside there[.]" (Def.'s Ex. L at 3, 5). Additionally, the United States notified the court that under the Massachusetts Rules of Civil Procedure, service could be made "by leaving copies [of summons and complaint] at [the defendant's] last and usual place of abode." (Def.'s Ex. L at 5 (quoting Mass. R. Civ. P. 4(d)(1)) (alterations in original)). Therefore, according to the Government, "leaving the summons and complaint at the defendant's last known address in Massachusetts clearly would qualify as personal service. As stated above, the March 28, 2006 postal tracer from Centerville, Massachusetts listed as the defendant's last known address one of the properties on which the Government now seeks to foreclose." (Def.'s Ex. L at 6). According to Officer Kelly, the March 2006 postal tracer again indicated that Mr. Tobins had not provided any forwarding address for his mail, which continued to be delivered to him in Centerville. (Pl.'s Ex. 1 ¶ 9).

In urging the Florida court to allow its motion to transfer, the Government noted that the statute of limitations had run on nearly $1.5 million of the tax assessments for which the United States was seeking judgment. (Def.'s Ex. L at 4). It argued that if the case was not transferred, the United States would be precluded from seeking to enforce the collection of these alleged liabilities. (*Id.*).

The Florida court allowed the United States' motion to transfer on April 7, 2006. (Def.'s Ex. M). In its order, the Florida court stated:

> At the time of filing [the Florida action], the United States believed Defendant

resided in Key West, Florida. On March 10, 2006, this Court issued an Order notifying the Government the case would be subject to dismissal if the Defendant was not served by April 28, 2006. The Government has since learned that the Defendant abandoned his Key West address and now resides in Massachusetts.

(Def.'s Ex. M at 1). Accordingly, on April 13, 2006, the Florida action was transferred to this court and captioned *United States of America v. Barry A. Tobins,* Civil Action No. 06–10678–WGY. The matter has since been consolidated with the Foreclosure Action.

### Additional Efforts to Serve Mr. Tobins

On April 6, 2006, Revenue Officer Kelly left copies of the Summons and Complaint in the Foreclosure Action at the 1110 Craigville Beach Road address in Centerville, Massachusetts, where Mrs. Tobins continued to reside. (Pl.'s Ex. 1 ¶ 11; Def.'s Ex. N). Officer Kelly claims that he had a good faith belief that this was Mr. Tobins' last and usual place of abode because Mr. Tobins was an owner of the property, his wife lived there, the Government had not located him in Florida, and a March 2006 postal tracer indicated that mail was delivered to Mr. Tobins in Centerville and that no forwarding address had been provided. (Pl.'s Ex. 1 ¶¶ 8–11). Officer Kelly also left a copy of the Summons and Complaint from the Florida action at the Craigville Beach Road address on August 2, 2006. (Pl.'s Ex. 1 ¶ 12). Along with those documents, he delivered a copy of the notice transferring the case to the District of Massachusetts, a copy of the order from the Florida court allowing the transfer, and docket sheets from the transferred action and the Foreclosure Action. (*Id.*).

Counsel for Mr. Tobins entered a limited appearance in the consolidated action on September 12, 2006, and on October 10, 2006, Mr. Tobins filed the instant motion to dismiss. (*See* Notice of Limited Appearance (Docket No. 19)). In his initial filings with the court, Mr. Tobins refused to disclose his address. (*See* attachment to Def.'s Ex. D). Nevertheless, on October 16, 2006, the United States located Mr. Tobins and was able to serve him personally by presenting copies of both complaints and summonses issued by this court to him at 5 West Cypress Terrace in Key West, Florida. (Pl.'s Ex. 5 (Declaration of Robert J. Kovacev) ¶ 4 and attachments thereto). The United States did not seek prior leave of court before attempting to reserve Mr. Tobins in Florida. (*See* Lopez Aff. ¶ 10).

Additional factual details relevant to the court's analysis are described below.

## III. ANALYSIS

### A. Whether Service was Effectuated in Massachusetts

Mr. Tobins argues that the United States' attempts to serve him with process in Massachusetts failed to comply with the requirements of both Fed.R.Civ.P. 4 and Massachusetts law, and that because of the Government's failure, this court may not exercise personal jurisdiction over the defendant. In particular, Mr. Tobins contends that the Government's attempted service at the Centerville address was defective because it was not made at his "last and usual place of abode" as defined by Massachusetts law. (Def.'s Mem. (Docket No. 21) at 10–14). Additionally, Mr. Tobins asserts that the summons that Officer Kelly left at the Centerville address on August 2, 2006 was inadequate under Fed. R.Civ.P. 4. (*Id.* at 14–15). It is not necessary for this court to finally decide whether the Government's effort to serve pro-

cess upon Mr. Tobins in Centerville was adequate. Even if the service was defective, the Government has presented sufficient evidence to warrant denial of Mr. Tobins' motion to dismiss.

### 1. *Applicable Rules Pertaining to Service of Process*

Pursuant to Rule 4(e), service upon an individual defendant from whom a waiver has not been obtained may be effected as follows:

> (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or
>
> (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e). Massachusetts law provides in relevant part that service may be made upon an individual by

> delivering a copy of the summons and of the complaint to him personally; or b y leaving copies thereof at his last and usual place of *abode;* or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by statute to receive service of process, provided that any further notice required by such statute be given.

Mass. R. Civ. P. 4(d)(1) (emphasis added). "Whether service is effective turns on the facts and circumstances of each case." *Ali v. Mid–Atlantic Settlement Servs., Inc.,* 233 F.R.D. 32, 35 (D.D.C.2006), order on

sanctions *amended* on *reconsideration* by 235 F.R.D. 1 (D.D.C.2006).

"[O]nce challenged, plaintiffs have the burden of proving proper service." *Rivera–Lopez v. Municipality of Dorado,* 979 F.2d 885, 887 (1st Cir.1992). Accordingly, the United States has the burden of proving that it met the requirements set forth in Fed.R.Civ.P. 4(e).

### 2. *Whether the Centerville Property was Mr. Tobins' Last and Usual Place of Abode*

In the instant case, the Government attempted to comply with Fed.R.Civ.P. 4(e)(1) by leaving copies of the summonses and complaints at Mr. Tobins' "last and usual place of abode" on April 6, 2006 and August 2, 2006. The parties dispute whether the Centerville property constituted Mr. Tobins' "abode" for purposes of serving process.

■ "Courts have not attempted to define the term[ ] . . . 'usual place of abode;' however, most require the serving party to demonstrate more than mere ownership or occasional occupancy in order to show sufficiency of service under [the federal rules of civil procedure]." *In re Daboul,* 82 B.R. 657, 660 (Bkrtcy.D.Mass.1987). Generally, the plaintiff must show "enough of a nexus or identity between the individual served and the place where service was left to demonstrate that the individual considered that place 'home' at the time of service." *Id.* Significantly, under both federal and Massachusetts law, "[t]he cases make clear that it is not enough to leave a summons at a house that defendant owns or occupies from time to time. The house must be his usual and normal residence." *Shore v. Cornell–Dubilier Elec. Corp.,* 33 F.R.D. 5, 7 (D.Mass.1963), and cases cited.

Consistent with this analysis, Massachusetts courts considering whether service was made at an individual's "last and usual

place of abode" have found service to be improper where the defendant no longer resided at the address to which the summons and complaint were delivered. *See, e.g., Farley v. Sprague,* 374 Mass. 419, 420–22, 425, 372 N.E.2d 1298, 1299–1300, 1302 (1978) (default judgment vacated for lack of proper service where service was made at a Massachusetts building owned by defendant, but where defendant had not resided in Massachusetts for 40 years); *Rogan v. Liberty Mut. Ins. Co.,* 305 Mass. 186, 187, 25 N.E.2d 188, 189 (1940) (no proper service of process where summons was left at Massachusetts residence described as defendant's "last and usual place of abode," but where defendant and his spouse had moved to Maryland two months prior); *Konan v. Carroll,* 37 Mass. App.Ct. 225, 228–30, 638 N.E.2d 936, 938–39 (1994) (default judgment vacated absent proper service of process where defendants had not resided at address for over four years and had no actual notice of lawsuit). Thus, in order to be considered the defendant's "last and usual place of abode" under Massachusetts law, there must be evidence that the defendant was continuing to use the address as his home.

■ In the instant case, there is evidence in the record to indicate that Mr. Tobins considered the Centerville property his home, even though he also resided in Florida. In particular, the record establishes that in March 2006, Mr. Tobins was still receiving mail at the Centerville address even though he claims that he had been living in Florida since January 2004. (Def.'s Ex. L at 2; Pl.'s Ex. 1 ¶ 9). More-

over, no forwarding address was ever provided for mail that he received in Centerville. (Pl.'s Ex. 1 ¶¶ 5, 9). Additionally, it is undisputed that Mr. and Mrs. Tobins have remained married and that Mrs. Tobins has continued to reside at the Centerville address throughout the relevant time period. (Def.'s Ex. D ¶ 5). According to Mr. Tobins, he and his wife make arrangements to visit each other often. (*Id.*). "[F]or purposes of effecting service under rule 4(e), an individual can have multiple "dwelling houses or usual places of abode," provided each contains sufficient indicia of permanence.'" *Jaffe & Asher v. Van Brunt,* 158 F.R.D. 278, 280 (S.D.N.Y.1994) (quoting *Nat'l Dev. Co. v. Triad Holding Corp.,* 930 F.2d 253, 257 (2d Cir.1991)) (internal quotations omitted). The fact that the defendant never had his mail forwarded to his address in Florida, and the fact that the defendant's spouse has continued to reside in Centerville, suggest that Mr. Tobins was using the Centerville address as one of his permanent residences.

Nevertheless, it is not necessary to finally determine whether 1110 Craigville Beach Road in Centerville was Mr. Tobins' "last and usual place of abode" under Massachusetts law. Even if the United States' attempt to serve Mr. Tobins in Massachusetts was defective because Mr. Tobins' did not reside in Centerville, the Government has shown that it is entitled to an extension of time to effectuate service of process and that Mr. Tobins' motion should be denied.[5]

5. Because the United States has shown that it is entitled to an extension of time to effectuate service of process upon Mr. Tobins, it is unnecessary at this time to determine whether, as the defendant argues, the summons that the Government delivered to the Centerville address on August 2, 2006 was insufficient under Fed.R.Civ.P. 4(a) and (b). Similarly,

because this court has not finally determined whether the Government's attempted service of process in Centerville was adequate, it declines at this time to address the plaintiff's argument that even if the service in Massachusetts was insufficient, pursuant to the court's decision in *Ali v. Mid–Atlantic Settlement Servs., Inc.,* 233 F.R.D. 32 (D.D.C.2006),

## B. Whether the Government is Entitled to an Extension of Time to Effectuate Service of Process

The United States argues that to the extent its efforts to serve Mr. Tobins in Massachusetts were insufficient, an extension of time to effectuate service of process is warranted because it has shown good cause for any delay. The Government further asserts that even if this court finds no good cause for a delay in effecting proper service, under the facts presented in the record, this court should exercise its discretion and grant an extension of time to perfect service of process. This court agrees that assuming the Government's attempts to serve process on Mr. Tobins in Massachusetts were inadequate, the Government's demonstration of good cause warrants an extension of the time for service. This court further finds that even if no good cause was shown, under the particular circumstances of this case, the United States still would be entitled to an extension of time.

### 1. Applicable Rules Regarding Time for Service of Process

Fed.R.Civ.P. 4(m) governs the timing of service of process. It provides in relevant part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

this court should deem the service effective because Mr. Tobins had actual notice of the

Fed.R.Civ.P. 4(m). "Once it has been established that proper service of process has not been made within the 120–day time period, there is a two-step inquiry under Rule 4(m)." *Shaw v. District of Columbia*, No. 05–1284, 2006 WL 1371681, at *8 (D.D.C. May 15, 2006). *See also In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001) ("Rule 4(m) requires a two-step analysis in deciding whether or not to extend the prescribed time period for the service of a complaint"). First, the court must determine whether the plaintiff has met its burden of establishing "good cause" for the untimely service. *See Shaw*, 2006 WL 1371681, at *8; *In re Sheehan*, 253 F.3d at 512. The "court must extend the time for service of process if there is good cause shown for the delay." *Riverdale Mills Corp. v. U.S. Dep't of Transp. Fed. Aviation Admin.*, 225 F.R.D. 393, 395 (D.Mass. 2005). "Second, if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period." *In re Sheehan*, 253 F.3d at 512. *See also Henderson v. United States*, 517 U.S. 654, 662, 116 S.Ct. 1638, 1643, 134 L.Ed.2d 880 (1996) ("courts have been accorded discretion to enlarge the 120–day period even if there is no good cause shown") (quotations and citations omitted); *Riverdale Mills Corp.*, 225 F.R.D. at 395 (if good cause is not shown, court still has discretion to extend time for service of process). As described below, the Government's demonstration of good cause for any delay in the proper service of process upon Mr. Tobins requires that this court grant the plaintiff an extension under Rule 4(m).

Local Rule 4.1 also addresses the untimely service of process. It provides in relevant part:

complaints and the United States made a good faith effort to serve him.

(A) Any summons not returned with proof that it was served within one-hundred twenty (120) days of the filing of the complaint is deemed to be unserved for the purpose of Fed.R.Civ.P. 4(m).

(B) Counsel and parties appearing pro se who seek to show good cause for the failure to make service within the 120 day period prescribed by Fed.R.Civ.P. 4(m) shall do so by filing a motion for enlargement of time under Fed.R.Civ.P. 6(b), together with a supporting affidavit. If on the tenth day following the expiration of the 120 day period good cause has not been shown as provided herein, the clerk shall forthwith automatically enter an order of dismissal for failure to effect service of process, without awaiting any further order of the court.

L.R. 4.1. Mr. Tobins argues that the United States failed to comply with this Rule before serving him personally on October 16, 2006. However, this court finds that under the circumstances of this case, the Government was not required to move for an enlargement of time pursuant to Local Rule 4.1.

### 2. *The Government's Demonstration of Good Cause*

■ Based on the record before this court, the United States has met its burden of establishing good cause for any delay in its ability to serve Mr. Tobins within the 120 days prescribed by Fed. R.Civ.P. 4(m). "Good cause means a valid reason for delay, such as the defendant's evading service." *Coleman v. Milwaukee Bd. of Sch. Dir.*, 290 F.3d 932, 934 (7th Cir.2002). Moreover, as the court explained in *McIsaac v. Ford*, 193 F.Supp.2d 382 (D.Mass.2002),

[G]ood cause is likely (but not always) to be found when the plaintiffs (sic) failure to complete service in timely fashion is a result of a third person, typically the process server, the defendant has evaded service of process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstance[s], or the plaintiff is proceeding pro se or in forma pauperis. Pro se status or any of the other listed explanations for a failure to make timely service, however, is not automatically enough to constitute good cause for purposes of Rule 4(m).

*McIsaac*, 193 F.Supp.2d at 383 (quoting 4B Wright & Miller, Federal Practice and Procedure: Civil 3d § 1137, at 342 (2002)) (first alteration in original). In the instant case, the Government has established that it has acted diligently in attempting to effect service upon Mr. Tobins.

The evidence shows that the United States made a number of reasonable efforts to locate Mr. Tobins and serve him in Florida. In particular, the Government initiated contact with Mr. Tobins' attorney and identified an address for him in Florida before filing suit. (Pl.'s Ex. 1 ¶ 4). It confirmed that address using a postal tracer. (Pl.'s Ex. 1 ¶ 5). It also attempted to confirm Mr. Tobins' Florida address by speaking directly with Mrs. Tobins. (Pl.'s Ex. 1 ¶ 7). Additionally, following its filing of the complaint against Mr. Tobins in Florida, the United States made two separate efforts to serve the defendant at the address that Mr. Tobins' counsel had given to the Government only two months prior to initiation of the legal action. (Def.'s Ex. J ¶¶ 6–7). When those efforts proved unsuccessful, the Government made various attempts to identify an updated address for Mr. Tobins, which included the renewal of Postal Service tracers, searches of Department of Motor Vehicles records, and searches for wage reports. (Def.'s Ex. J ¶ 8). While, in hindsight, other efforts

could have been made, this court finds that the plaintiff was diligent in its efforts to locate Mr. Tobins in Florida.

The Government's conclusion that Mr. Tobins had returned to the Centerville address, albeit mistaken, was reasonable based on the evidence that was available to it as a result of its investigation. The Government knew that Mr. Tobins owned the property in Centerville, as well as other property in Massachusetts. (*See* Pl.'s Ex. 1 ¶ 3). It also knew that Mr. Tobins' spouse resided in Centerville, that the defendant continued to receive mail at that address, and that Mr. Tobins had provided no forwarding address. (*See* Pl.'s Ex. 1 ¶¶ 5, 8, 9). Furthermore, the Government learned at a status hearing before the Florida court on February 8, 2006 that an order the court had tried to send to Mr. Tobins had been returned as undeliverable. (Def.'s Ex. J ¶ 4). Consequently, it was logical for the Government to believe that Mr. Tobins had provided no forwarding address in Florida. Based on these circumstances, the Government had good reason to conclude that Centerville was Mr. Tobins' last and usual place of abode and that its attempt to serve Mr. Tobins there was adequate.

The evidence also suggests that Mr. Tobins may have been trying to evade service of process. For instance, the record indicates that prior to October 2005, when Officer Kelly contacted Mr. Tobins' attorney, Mr. Tobins never took any steps to notify the IRS that he had moved to Florida in January 2004, even though his counsel had been communicating with the IRS about Mr. Tobins' alleged tax liabilities dating back to December 1986. (*See* Pl.'s Ex. 1 ¶ 4, Def.'s Ex. C ¶¶ 2–4). Mrs. Tobins also refused to provide an address for her husband or other information on his whereabouts when questioned directly by Officer Kelly. (Pl.'s Ex. 1 ¶ 7). In

addition, Mr. Tobins apparently failed to notify his counsel of his change of address in Florida, which resulted in the filing of inaccurate information with the Florida Secretary of State. (Pl.'s Exs. 3 & 4). Even if Mr. Tobins was not intentionally trying to evade service of process, this court finds that his actions, rather than those of the United States, impeded any failure by the Government to effectuate timely service.

"The rules governing service of process are not designed to create an obstacle course for the plaintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to the court's jurisdiction." *TRW, Inc. v. Derbyshire,* 157 F.R.D. 59, 60 (D.Colo.1994). This court finds that the United States took sufficient reasonable steps to locate and serve Mr. Tobins and that any delay was not due to any neglect on the part of the plaintiff. *See Benjamin v. Grosnick,* 999 F.2d 590, 592 (1st Cir.1993) (district court abused its discretion by dismissing case for insufficient service of process where plaintiffs "did not purposefully delay personal service" and "completed all of the steps within their power necessary to effectuate such service"). Therefore, pursuant to Fed. R.Civ.P. 4(m), the United States is entitled to an extension of the time to perfect service of process in this case.

### 3. *Additional Considerations Warranting an Enlargement of Time for Service of Process*

Even if the Government had not shown good cause for any delay that may have occurred, this court would exercise its discretion and extend the time for service. If good cause is lacking, the determination of whether to extend the time for service of process is based on a number of factors, including whether: "(a) the party to be served received actual notice

of the lawsuit; (b) the defendant would suffer ... prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed."

*Riverdale Mills Corp.*, 225 F.R.D. at 395 (quoting *In re Sheehan*, 253 F.3d at 512). *See also Coleman*, 290 F.3d at 934 ("most district judges probably would exercise lenity and allow a late service" where defendant shows no actual harm in ability to defend lawsuit due to delay, where defendant likely received actual notice shortly after attempted service, and where dismissal would bar claims due to expiration of statute of limitations). Consideration of each of these factors weighs in favor of an extension.

There is no question that Mr. Tobins received notice of the consolidated action. On April 6, 2006 and August 2, 2006, Officer Kelly left copies of the complaints at the Centerville address where Mrs. Tobins resides, and on September 12, 2006, counsel entered a limited appearance on Mr. Tobins' behalf. (Pl.'s Ex. 1 ¶¶ 11, 12; Notice of Limited Appearance (Docket No. 19)). Moreover, "other than the inherent 'prejudice' in having to defend the lawsuit," Mr. Tobins has not shown any actual harm to his ability to defend the consolidated action as a result of any delay in service. *Shaw*, 2006 WL 1371681, at *8. Furthermore, it is undisputed that the statute of limitations has run on nearly all of the alleged tax assessments for which the Government is seeking relief. (Def.'s Ex. L at 4). Accordingly, any "dismissal without prejudice [would have] the effect of dismissal with prejudice[.]" *Coleman*, 290 F.3d at 934.

This final consideration is particularly compelling. The Advisory Committee Notes to Rule 4(m) specifically note that the Rule authorizes the court to relieve the plaintiff of the consequences of a delay in service, and that such "[r]elief may be

justified, for example, if the applicable statute of limitations would bar the refiled action...." Fed.R.Civ.P. 4(m), Advisory Committee Note, 1993 Amendments. Under the circumstances presented here, where the defendant received actual notice and will not be prejudiced as a result of the delay in service, the court finds that an extension of time that will enable disposition of the case on the merits is appropriate.

Mr. Tobins argues that no extension of the time for service of process should be allowed because the Government, in its motion to transfer the Florida case to Massachusetts, made misrepresentations to the court regarding the defendant's location and its ability to serve him in Massachusetts. (Def.'s Mem. at 17–18). The record provides no indication that the plaintiff intended to mislead the court. As discussed above, it was reasonable for the Government to conclude that Mr. Tobins had left Florida and returned to Massachusetts, and that it would be able to serve him there. Additionally, although the Florida court, in its order allowing the transfer, stated that "[t]he Government has since learned that the Defendant abandoned his Key West address and now resides in Massachusetts," the Government never actually stated in its motion that Mr. Tobins was residing in Massachusetts. (*See* Def.'s Ex. M at 1). Instead, the United States described Mr. Tobins' ties to Massachusetts and informed the court that Mr. Tobins "may be found to reside there[.]" (Def.'s Ex. L at 5). It also informed the court that it had been unable to locate Mr. Tobins in Florida and described why it believed it would be able to serve the defendant under the Massachusetts Rules of Civil Procedure. (*Id.* at 1, 5, 6). The record indicates that the Government had every reason to believe that these representations were true.

Mr. Tobins also argues that the ·plaintiff's failure to move for an extension of time pursuant to Local Rule 4.1 and Fed. R.Civ.P. 6(b) before re-serving him personally in Florida should be fatal to the United States' efforts to obtain an extension now. (Def.'s Reply Mem. (Docket No. 24) at 14–17). The defendant relies on *McIsaac*, in which the court declined to allow an extension of the time for service even though the statute of limitations had run on the plaintiff's claims. *McIsaac*, 193 F.Supp.2d at 384. The court in that case, after acknowledging that the Advisory Committee Notes to Fed.R.Civ.P. 4(m) "refer to the running of the statute of limitations as one of the exceptional circumstances in which a court would be justified in granting an extension even absent a showing of good cause[,]" expressed the view "that this exceptional relief is appropriate only in circumstances where an extension of time is sought prior to the expiration of Rule 4(m)'s deadline. . . ." *Id.*

This court does not agree that the United States was required to move for an enlargement of time before the court may extend service deadlines. Nothing in Rule 4(m) or the Advisory Committee Notes requires that before the court may use its discretion to extend the deadline for service of process, the plaintiff must have moved for an extension of time. *See* Fed. R.Civ.P. 4(m). Moreover, unlike *McIsaac*, where the plaintiff made no attempt to serve the defendants until the last day of the 120 day deadline, the Government attempted to serve Mr. Tobins well within the deadline. *See McIsaac*, 193 F.Supp.2d at 382–83. Specifically, the record shows that the United States had attempted to serve Mr. Tobins in the Florida action by no later than March 8, 2006, over a month before the April 19, 2006 deadline, and that it attempted to serve Mr. Tobins process in the Foreclosure Action on April 6, 2006, less than one month after filing the case. (*See* Def's Ex. J (dated March 8, 2006) ¶ 7;. Def.'s Ex. N). Additionally, because the Government believed and has continued to assert that service of process at the Centerville address was proper, it was logical for it to conclude that a motion for an extension of time to serve process was unnecessary. Based on the facts of this case, this court does not find that the Government's failure to move for an extension should preclude a ruling in its favor.

"[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson*, 517 U.S. at 672, 116 S.Ct. at 1648. An extension of the time to serve process in this case will enable the parties to proceed on the merits while at the same time meeting these objectives.

## IV.  *CONCLUSION*

For all of the reasons detailed above, the defendant's motion to dismiss (Docket No. 20)·is DENIED. The deadline for service of process of this consolidated action shall be extended retroactive to October 16, 2006.

January 24, 2007